KAHN, J.T.C.
This is the eourt’s determination with respect to a local property tax appeal involving a one-family home located at 30 Wingate Drive in the Township of Livingston, Essex County, New Jersey, also known as block 5500, lot 56.
Plaintiff (“taxpayer”) appealed the property’s 1998 assessment ($103,900) to the Essex County Board of Taxation, which reduced the assessed value to $83,100. Taxpayer appealed from that determination.
The subject, as aforesaid, is a one-family ranch home constructed in and around 1969. The lot contains .689 acres, or 30,000 square feet. There is no dispute that the improvements are in good condition. The original 1998 assessment is as follows:
Land $28,900
Improvements 75,000
Total $103,900
The judgment of the Essex County Board of Taxation is:
Land $29,900
Improvements 54,200
Total $83,100
The average ratio as promulgated by the Director of the Division of Taxation for 1998 in the Township of Livingston is 26.80%, with the upper limit of the common level range being 30.82%, and the lower limit 22.78%.
Taxpayer appeared pro se. He did not qualify as an expert witness but submitted the following four purported comparable sales:
*432 Sale Date Sale Block Price & Lot Address
Sale # 1 7/16/97 $285,000 5500 55 28 Wingate Dr.
Sale # 2 8/29/97 $210,000 5500 58 34 Wingate Dr.
Sale # 3 9/11/97 $233,000 5500 57 32 Wingate Dr.
Sale # 4 10/17/97 $237,000 5300 24 10 Dellmead Ave.
There is no dispute that three of the four comparables are virtually next door to the subject and relatively similar in style and age. Three of taxpayer’s four comparable sales were consummated shortly prior to October 1, 1997, the relevant assessment date. Taxpayer arrived at his estimate of value for the subject ($260,000) by simply averaging the aforementioned sale prices. He made no adjustments between the comparables and the subject and provided no appraisal report.
Taxpayer’s primary argument involved the subject’s proximity to high tension wires located to the rear of his property. In fact, one of the purported comparables (32 Wingate Drive) has an easement for power line use through the rear yard. The high tension wires are conveyed upon stanchions, one of which is located 117 feet from one extremity of the subject property and, more particularly, only 147 feet from the house. Taxpayer also points to his rear yard slope and a drainage ditch on the rear edge of the property. He contends that said drainage ditch causes flooding of his rear yard also diminishing the value of his property.
The municipality produced a real estate appraiser who was qualified to testify as an expert witness. He too presented four purported comparable sales of similar homes of similar vintage ranging in sales price from $233,000 to $310,000. One of his comparables was also utilized by taxpayer. That comparable, 28 Wingate Drive, is located adjacent to taxpayer. The other three comparables were located on different streets and distant from the subject property and, therefore, clearly further from the high tension wires. This witness presented an adjustment grid demon *433 strating usual adjustments for size, age, location and amenities. The appraisal expert concluded the subject’s value to be $320,000 based upon this market sales approach. The expert witness made adjustments between the subject property and his comparables based upon their respective differences. This witness, however, did not make adjustments for the existence of the slope and drainage ditch on the subject property or proximity to the high tension wires.
 Litigants are not required to produce an expert witness or an appraisal report. Taxpayer herein did provide the court with a schedule of comparable sales timely served upon the municipality. Since taxpayer was not an appraisal expert, he was precluded from testifying as an expert witness. Taxpayer, however, was not required to provide an expert witness and an appraisal report. Taxpayer would appear to be at a grave disadvantage against an appraisal expert’s testimony along with an appraisal report.
N.J.S.A. 2B:13-15 provides as follows:
Hearings in ihe Small Claims Division shall be informal, and the judge may receive evidence as the judge deems appropriate for a determination of the ease, except that all testimony shall be given under oath. A party may appear on the party’s own behalf or by an attorney or by any other person as may be provided by the Rules of the Supreme Court.
R. 8:11 provides as follows:
The general rules of practice and procedure in the Tax Court shall apply to the small claims division; however, discovery is limited as provided in if. 8:6 — 1(a)(4) and the pretrial conference may be held at the time that the case is scheduled for hearing. The pretrial conference and the hearing shall be informal and the Court may hear such testimony and receive such evidence as it deems necessary or desirable for a just and equitable determination of the case. All testimony shall be given under oath and a verbatim record shall be made of the proceeding.
This court construes said statute and rule as authorizing the Tax Court to consider reliable evidence from a pro se litigant, even though such evidence is not derived from expert opinion.
In Pennwalt Corp. v. Township of Holmdel, 4 N.J.Tax 51 (Tax 1982), Judge Rimm rejected the opinion of value of the municipality’s expert, and stated as follows:
*434 It is not credible, it does not involve proper appraisal methodology and it is useless' in attempting to arrive at the value of the property which is the subject of this. matter.
The judiciaiy and fact-finding bodies are not bound by the opinions of expert witnesses. Wright v. Purepac Corp., 82 N.J.Super. 100, 111, 196 A.2d 695 (Cty.Ct.1963). The weight to be given to an expert’s opinion depends especially upon the facts and reasoning which are offered as the foundation of his opinion. Ocean Cty. v. Landolfo, 132 N.J.Super. 523, 528 [334 A.2d 360] (App.Div.1975). The weight and value of expert testimony are for the trier of the facts. Robbins v. Thies, 117 N.J.L. 389, 398 [189 A. 67] (E. & A.1937). An expert’s opinion may be adopted in whole or in part or completely rejected. Middlesex Cty. v. Clearwater Village, Inc., 163 N.J.Super. 166, 174 [394 A.2d 390] (App.Div.1978), certif. den. 79 N.J. 483 [401 A.2d 239] (1979). [Atlantic City v. Atlantic Cty. Bd. of Tax., 2 N.J.Tax 30, 42-43 (Tax.Ct.1980) ]
[Id. at 61.]
Taxpayer herein presented four sales of comparable properties. These sales ranged from $210,000 to $285,000, all of which sales took place within several months of the relevant assessment date. The comparables contained similar square footage, land size, age and condition. Taxpayer merely averaged their adjusted sales prices ($260,000) to obtain his conclusion of value, which method this court is not obligated to accept. These comparable sales, however, do provide reliable evidence from which this court can glean value considering the photographs and other testimony.
From a portion of the municipal tax map located in the municipality’s appraisal expert’s report, it is clear that the path of the high tension wires runs at an angle, demonstrating that the distance from the high tension wires and taxpayer’s property (117 feet) expands greatly as the path of the high tension wires moves away from Wingate Drive. It is plain, therefore, that the distance between the high tension wires and the comparable utilized by both parties (28 Wingate Drive) is significantly greater than 117 feet. In fact, the photographs of 28 Wingate Drive located in the municipality’s appraisal report do not even show the existence of the high tension wires, whereas a photograph of taxpayer’s property clearly places the wires within view. The map also demon-' strates that a child, perhaps residing at taxpayer’s property, would easily be able to have contact with the stanchion that holds the high tension wires. This is not the case with respect to 28 Wingate Drive wherein the distance is much greater. Even more *435 so is the distance between the high tension wires and the municipality’s appraisal expert’s three additional comparables, which comparables are blocks away from said stanchions. From those comparables, a child would have to cross various streets and even trespass over other properties.
The aforesaid tax map also reveals that taxpayer’s two comparables (32 and 34 Wingate Drive), located on the other side of the subject property on Wingate Drive, are almost in the middle of the path of the high tension wires and, in fact, one of those properties contains an easement for same thereon. Those properties sold for $210,000 and $233,000 shortly before October 1, 1997. This court feels that an adjustment between 28 Wingate Drive and the subject was warranted based upon proximity to the power lines. The comparables located at 32 and 34 Wingate Drive demonstrate clearly that the closer the property to the negative condition, the lower the market value.
The municipality’s three comparable sales, located significantly further from the high tension wires than the subject, were not adjusted for lack of proximity to the high tension wires. In the municipality’s expert witness’s opinion, actual proximity to the wires was not an important factor in determining value.
The four comparables utilized by taxpayer clearly demonstrate a difference in sales price based upon proximity to the high tension wires. The minor differences in home style and square footage do not warrant a selling price range between $210,000 and $285,000.
This court finds that adjustments, that are physical in nature, made by the municipality’s expert appear reasonable and reliable. Those adjustments indicate that the physical quality of the subject property is superior to 28 Wingate Drive by $14,250. This comparison with 28 Wingate Drive ($285,000 unadjusted sale price) increases the value of the subject property, according to the municipality’s expert witness, to $299,250.
The municipality’s appraisal expert additionally determined that the 28 Wingate Drive sale was a relocation sale, and therefore, not *436 subject to normal market conditions. He adjusted the subject upwards in value in the amount of $16,000 based upon this factor so that the adjusted value of the subject, as compared with 28 Wingate Drive, totals $315,250.
As stated aforesaid, this court is not bound to accept any or all of the expert’s testimony. This court finds the municipality’s expert’s opinion of value to be unreliable. His opinion that a $16,000 adjustment should be made by reason of the alleged relocation sale of 28 Wingate Drive is unsupported by reliable facts. The expert witness testified that this information was based upon something he heard from a real estate broker. An expert witness may testify as to certain facts obtained from third parties in the regular course of his appraisal assignment. However, the municipality’s expert provided no reliable information to support either the fact that the property was the subject of a relocation sale or that the property was not subject to normal marketing conditions.
With a lower selling price of $210,000 (34 Wingate Drive closest to the high tension wires) and a high of $285,000 (28 Wingate Drive furthest from the high tension wires), this court finds that the subject should command a selling price somewhere in between. This court has already accepted a portion of the municipality’s expert witness’s opinion. The subject property’s superior style and other amenities require that the 28 Wingate Drive sale price ($285,000) be adjusted upward in the amount of $14,250 to reflect the subject’s higher value. This expert witness, however, failed to make any downward adjustment to reflect either the subject’s greater proximity to the high tension wires or its rear yard flooding condition. This court finds, from the three comparables located on Wingate Drive, that an adjustment must be made to reflect these negative factors. The sale price of the homes located at 28, 32, and 34 Wingate Drive (the subject is located at 30 Wingate Drive) clearly demonstrate that the closer to the high tension wires, the lower the value. Based upon the aforesaid factors, this court finds that as of October 1, 1997 the *437 relevant assessment date herein, the value of the subject property is $275,000.
This court must now determine whether or not taxpayer is entitled to discrimination relief on the basis of Chapter 123 (N.J.S.A. 54:51A-6) by calculating the ratio of the original assessment ($103,900) to true value as found by this court ($275,000). The judgment of the Essex County Board of Taxation ($83,000) is not a consideration in this court’s determination. Piscataway Assoc. Inc. v. Piscataway Tp., 73 N.J. 546, 376 A.2d 527 (1977); Feder v. Passaic City, 105 N.J.Super. 157, 251 A.2d 457 (App.Div.1969); Rumson v. Haran, 3 N.J.Tax 590, 596 (Tax 1981). The case law clearly indicates that the relationship of the original assessment to true value is the relevant issue, without any consideration to the result in the county board of taxation.
The ratio of the subject property’s assessment ($103,900) to this court’s finding of true value ($275,000) is 37.78%, clearly above the upper level (30.82%) of the common level range. Accordingly, taxpayer is entitled to Chapter 123 relief pursuant to N.J.S.A. 54:51A-6. Applying the Chapter 123 ratio as promulgated by the Director of the Division of Taxation in the amount of 26.80% to this court’s finding of true value ($275,000) results in an appropriate assessment for the subject property in the amount of $73,700.
Judgment for 1998 is hereby entered as follows:
Land $28,900
Improvement 44,800
Total $73,700.