BIANCO, J.T.C.
This is the court’s determination with respect to a local property tax appeal for the 2000 tax year involving a single-family dwelling located at 7 Field Point Drive in the Township of Holmdel, County of Monmouth, also known as block 50.15, lot 40(“the subject property”).
The appeal raises a novel issue of whether the tax assessment on a marital residence owned by one spouse (and not as tenants by the entirety as is more commonly the case), can be challenged by the non-owner spouse.
The subject property consists of a 3,718 square foot single-family colonial style dwelling constructed in 1985, on a lot containing 1.03 acres, or approximately 44,867 square feet. There is no dispute that the improvements are in generally good condition, with the exception of some minor maintenance items.
The original 2000 assessment for the subject property is as follows:
Land $192,300
Improvements 337,000
Total $529,300
The average ratio as promulgated by the Director of the Division of Taxation pursuant to N.J.S.A. 54:l-35(a) to -35(e) (“Chapter 123”) for 2000 in the Township of Holmdel is 81.47%, with the upper limit of the common level range being 93.69%, and the lower limit being 69.25%.
Plaintiffs (“the Slaters”) appealed the subject property’s original 2000 assessment to the Monmouth County Board of Taxation (“the County Board”). The County Board reduced the original assessment of the subject property and entered judgment as follows:
*11 Land $192,300
Improvements 267,700
Total $460,000
Both the Slaters and defendant (“the municipality”) now appeal from that determination.
The Slaters are married to one another and reside together at the subject property. They purchased said property together as their marital residence in 1986. Two years later, title to the residence was conveyed by them to plaintiff Clara B. Slater only.
At trial, Mr. Slater appeared pro se on behalf of both plaintiffs. Mrs. Slater did not appear at trial. Although both Mr. and Mrs. Slater are listed as plaintiffs, the court notes that only Mr. Slater signed the complaint.
At the conclusion of the Slaters’ case, the municipality moved to dismiss the matter for lack of standing. The municipality argued that since the subject property had been conveyed solely to Mrs. Slater in 1988, Mr. Slater was no longer an owner and therefore did not have standing to bring this tax appeal.
In response, Mr. Slater testified that the subject property was his marital residence. The court is satisfied that the subject property is the Slaters’ marital residence and as such finds that Mr. Slater does have standing to bring the action. The municipality’s motion is therefore denied. Before proceeding to a determination of value in this matter, the court wishes to amplify its reasons for denying the municipality’s motion.
I. STANDING
“Standing ‘refers to the plaintiffs ability or entitlement to maintain an action before the court.’ ” In re Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999). Standing cannot be waived. New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 412, 686 A.2d 1265 (App.Div.1997). New Jersey courts have taken a liberal approach to standing. Dome Realty, Inc. v. City of Paterson, 150 N.J.Super. 448, 452, 375 A.2d 1240 (App.Div.1977). *12 “[The] courts have considered the threshold for standing to be fairly low. In other words, so long as the litigant evidences a sufficient stake with real adverseness, standing will be found.” Reaves v. Egg Harbor Tp., 277 N.J.Super. 360, 366, 649 A.2d 904 (Ch.Div.1994). More specifically, there must be a substantial likelihood that the plaintiff will experience some harm in the event of an unfavorable decision. Loigman v. Township Committee of the Twp. of Middletown, 297 N.J.Super. 287, 295, 687 A.2d 1091 (App.Div.1997).
The issue of standing to prosecute tax appeals has been determined in a manner consistent with standing issues in other areas of the law. Standing with regal’d to tax appeals was established by the Legislature in N.J.S.A. 54:3-21. That statute provides in pertinent part:
A taxpayer feeling aggrieved by the assessed valuation of the taxpayer’s property ... may [within the time set by statute] ... appeal to the county board of taxation by filing with it a petition of appeal ... [or7, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $750,000.00.
[(Emphasis added).]
The Tax Court in Ewing Twp. v. Mercer Paper Tube Corp., 8 N.J.Tax 84, 88-89 (Tax 1985) addressed the meanings of the words “taxpayer,” “aggrieved,” and “property” as used in N.J.S.A. 54:3-21. After analyzing the statute’s legislative history, the Tax Court concluded that it could be reasonably inferred that the Legislature intended “to afford the right to appeal [(i.e., standing)] essentially to any person whose tax payments are adversely affected by an improper assessment and not only to an owner in fee of the assessed property appealed.” Id. at 91 (emphasis added).
New Jersey courts have recognized that certain plaintiffs have standing to prosecute tax appeals in certain circumstances even though they do not own the property in question. See Ewing Tp., supra, 8 N.J.Tax 84 and Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 525 A.2d 323 (1987) (discussing the standing of tenants).[1] See also Chemical Bank, N.J. v. Absecon, *13 13 N.J.Tax 1 (Tax 1992) (discussing standing of a foreclosing mortgagee). Furthermore, see Lato v. Rockaway Tp., 16 N.J.Tax 355 (Tax 1997), (discussing the standing of a holder of a tax sale certificate). But cf. Northfield City v. Zell, 12 N.J.Tax 180 (Tax 1991) (holding that a holder of a tax sale certificate lacks standing to maintain a tax appeal).
The Supreme Court in Village Supermarkets, Inc. determined that a tenant’s standing to appeal a landlord’s property taxes was “one of degree, depending upon the relative circumstances of the parties and their economic interests.” Village Supermarkets, Inc., supra, 106 N.J. at 633, 525 A.2d 323. The Court listed five factors to be considered in the context of the landlord-tenant relationship. Some of the factors, however, are just as applicable in standing determinations in other contexts. Lato, supra, 16 N.J. Tax at 359. Among the factors to be considered are: (1) the plaintiffs relationship to the property; (2) whether there was any reason to believe that the plaintiff would not adequately represent the owner’s interest; and (3) whether such a plaintiff had the ability to mount and prosecute an effective appeal. Village Supermarkets, Inc., supra, 106 N.J. at 634-5, 525 A.2d 323. These three factors are relevant to a determination of standing in the present case.
The issue here is whether a spouse, who resides in the marital residence but is not an owner of the property is a taxpayer feeling aggrieved by the assessed valuation of the taxpayer’s property so as to give him standing to appeal that property’s taxes pursuant to N.J.S.A. 54:3-21.
The Legislature recognized that the marital residence holds special significance regardless of whether one or both spouses hold title to the property. N.J.S.A. 3B:28-3 provides as follows:
As to real property occupied jointly by a married person with his or her spouse acquired on or after May 28, 1980, as their principal matrimonial residence, every married person shall be entitled to joint possession thereof with his or her spouse *14 during their marriage, which right of possession may not be released, extinguished or alienated without the consent of both spouses 'except by judgment of a court of competent jurisdiction. All other real property owned by either spouse which is not the principal matrimonial residence may be alienated without the consent of both spouses.
Case law has also recognized the special significance of the marital residence. In Pilone v. Blanda, 226 N.J.Super. 397, 402, 544 A.2d 439 (Ch.Div.1988), the court held that “No matter which spouse holds legal title, when once, as mamed persom, they together occupy a residence as their principal matrimonial residence, both have a right to continued possession of it so long as their mamage endures.”
The Slaters purchased the subject property jointly in 1986 as their principal matrimonial residence and have resided there together as husband and wife ever since. The fact that Mrs. Slater took sole ownership of that property in 1988 did not extinguish Mr. Slater’s continued right to joint possession thereof with his wife.
Moreover, it was a husband’s obligation under common law to provide suitable support and maintenance for his wife in a manner commensurate with his means and circumstances. Bonanno v. Bonanno, 4 N.J. 268, 273, 72 A.2d 318 (1950). A husband was also liable for necessary expenses incurred by his wife. Jersey Shore, Etc. v. Estate of Baum, 84 N.J. 137, 142, 417 A.2d 1003 (1980).
Marking a change in the common law rule, the Supreme Court in Jersey Shore, Etc., supra, at 141, 417 A.2d 1003, concluded “that the common law rule must yield to the evolving interdependence of married men and women and to the reality that a marriage is a partnership.” The Court also found that “both spouses are liable for necessary expenses incurred by either spouse in the course of the marriage ” and further noted that “in most marriages a husband and wife consider themselves as a financial unit in paying necessary expenses incmred by either marital partner.” Ibid.
The only effect of the change in the common law was to make a wife equally liable with her husband for marital debts and expenses. The change had no effect on a husband’s potential *15 liability. Therefore, under both the common law rule and the holding in Jersey Shore, Etc., Mr. Slater remains potentially liable for property taxes owed by his wife as a necessary expense pursuant to her ownership of the subject property, even though he does not own that property.
In considering the aforementioned applicable factors to determine standing as delineated in Village Supermarkets, Inc., supra, the court is satisfied that Mr. Slater’s inalienable right of possession in his marital residence, coupled with his potential tax liability for the same demonstrate that his relationship to the subject property and his interest therein are substantial. The court is also satisfied that Mr. Slater could adequately represent his wife’s interests in this tax appeal (1) because of the long and enduring marital bond between them and (2) because of his own substantial interest in the subject property. Finally, despite his appearing pro se in this matter, Mr. Slater gave the court no indication that he did not have the ability to mount and prosecute an effective appeal.
Therefore, this court finds that Mr. Slater qualifies as a “taxpayer” within the meaning of N.J.S.A. 54:3-21 based upon his possessory right to the marital residence and his potential tax liability for the same. The court also finds that the subject property qualifies as “the taxpayer’s property” within the meaning of N.J.S.A. 54:3-21 since Mr. Slater’s possessory right to the martial property is inalienable and constitutes a substantial ownership interest.
Accordingly, the court finds that under N.J.S.A. 54:3-21 Mr. Slater has standing to bring this tax appeal. That having been decided at trial and more fully explained herein, the court now turns to a determination of value.
II. DETERMINATION OF VALUE
 Mr. Slater provided evidence of three comparable sales. All three comparable sales offered by Mr. Slater are located within the Township of Holmdel. They are as follows:
*16 Sale Sale Block
Sale Date Price & Lot Address
Sale # 1 7/16/99 $640,000 49,1 115 S. Telegraph Hill Road
Sale #2 8/26/99 $646,500 50,9 6 Sunrise Circle
Sale #3 2/19/99 $592,500 30.09, 11.04 29 Dora Lane
There is no dispute that the first two of the Slaters’ three comparable sales, both built in 1993, are in close proximity to the subject property and relatively similar in style and amenities. All three of the comparable sales submitted by the Slaters closed (or settled) within the 8 months prior to October 1, 1999, the relevant assessment date. In addition, the Slaters’ comparable sales are relatively close in lot size to the subject property.
Mr. Slater testified that comparable sales one and two are the most comparable to the subject property with regard to various improvements and amenities. For example, both are single-family dwellings with similar floor plans, three-car garages in the basements, circular driveways, brick fronts, three sides of aluminum siding, and are located in the same neighborhood as the subject property. Mr. Slater further testified that comparable sale three is the least comparable to the subject property. That sale had the lowest sale price of the Slaters’ three comparable sales.
Mr. Slater did not qualify as an appraisal expert since he had no experience in that field. He was therefore precluded from testifying as an expert witness. Mr. Slater did not secure the services of an appraisal expert and therefore provided no appraisal report or expert testimony as to value. Accordingly, he made no adjustments between the comparable sales and the subject property. Mr. Slater offered no estimate of value for the subject property.[2]
*17 Mr. Slater’s primary argument involved a 25-foot wide sanitary sewer easement that traverses the rear yard of the subject property- Mr. Slater testified that because of the easement, 52% of the subject lot is not usable. Mr. Slater also pointed to the steep rear yard slope on the subject property that is situated in the same location as the easement. He argued that the slope, along with the sanitary sewer easement diminish the value of the property. None of the comparable sales offered by the Slaters are encumbered by an easement or steep slopes.
In support of its counter-claim the municipality produced a real estate appraiser who qualified to testify as an expert witness. The municipality’s expert also prepared an appraisal report. She presented five comparable sales of similar homes of similar vintage ranging in sales price from $625,000 to $820,000. All of the municipality’s comparable sales are located within the same neighborhood as the subject property. All of the municipality’s comparable sales are situated on lots close in size to that of the subject property.
Four of the municipality’s comparable sales are located on culde-sac streets, just as the subject property; and three of the comparable sales are encumbered by one or more easements. Those easements, however, are confined to locations along property lines, unlike the subject property where the easement traverses the center of the rear yard.
The municipality’s expert witness made adjustments between the subject property and the comparable sales. They included adjustments for the closing dates of the sales contracts, condition, number of rooms, gross living area, partially finished or finished basements, garages, fences, pools and easements. There was no separate adjustment made for slopes since the slope and the easement on the subject property were in the same location. The *18 appraisal expert concluded that the subject property’s value was $680,000 based upon the market sales approach.
R. 8:6 — 1(b)(1) provides in pertinent part:
A party intending to rely upon the testimony of any person testifying as a valuation expert shall furnish each opposing party with a copy of the written appraisal report of the expert ...
It can be ascertained from the plain language of the R. 8:6-1(b)(1) that the use of expert testimony and appraisal reports to prove value in tax appeals is optional, not mandatory. Indeed, the Tax Court has held that litigants are not required to produce an expert witness or an appraisal report. Cohn v. Livingston Tp., 18 N.J.Tax 429, 433 (Tax 1999). The court is mindful of the cost of litigating an appeal of the assessment of a single family home. Otelsberg v. Bloomfield Tp., 18 N.J.Tax 243, 249 (Tax 1999), see also Glen Wall Assoc. v. Wall Tp., 99 N.J. 265, 277, 491 A.2d 1247 (1985), rev’g 6 N.J. Tax 448 (App.Div.1984), aff'g 6 N.J.Tax 24 (Tax 1983). Despite the cost of litigation, the court in Otelsberg was careful to note:
Although it may not be cost effective to engage an expert witness, taxpayer is not relieved from the responsibility of providing this court with competent and sufficient evidence of value.
[Otelsberg, supra, 18 N.J.Tax at 249 (emphasis added).]
Accordingly, the Court has recognized that litigants in Tax Court who do not engage an expert witness, although not required to do so, would appear to be at a grave disadvantage against an appraisal expert’s testimony along with an appraisal report. Cohn, supra, 18 N.J. Tax at 433. This was clearly the situation with regard to the Slaters.
Since Mr. Slater chose not to utilize a real estate appraisal expert and did not qualify as an expert himself, he was unable to adjust the comparable sales that he presented into evidence pursuant to the market sales approach to value. Accordingly, no adjustments were made to account for the aforementioned differences between the comparable sales and the subject property including, and most importantly, an adjustment for the easement that significantly impacts the rear yard of the subject property.
*19 Therefore, despite the positive attributes of the Slaters’ comparable sales, given their location and similarity to the subject property, and the proximity of the sale dates to the relevant assessment date (October 1, 1999), they do not provide reliable evidence from which this court can determine value.
The municipality’s expert appraiser prepared a Summary Appraisal Report (“the report”) of the subject property that was marked as defendant’s Exhibit D-2 and admitted into evidence. Five comparable sales (listed as Comparable 1 through Comparable 5) were offered by the municipality and summarized in the Sales Comparison Grid on page 25 of the report. The municipality’s expert testified that comparable sales one, two, and three are the most comparable to the subject property. The court agrees.
All three comparable sales are located in the same neighborhood of the subject property. In fact, comparable three is located on the same street as the subject property. All three sales closed (or settled) within six to thirteen months prior to the relevant assessment date (October 1,1999). The sales prices of these comparable sales ranged from $625,000 to $765,000. The municipality’s expert made adjustments for various factors set forth above.
Most compelling to the court was the adjustment made to account for the easement on the subject property in comparison to easements on some of the comparable sale properties. Two of the municipality’s three most comparable sales contained easements but none as debilitating as the easement on the subject property. The municipality’s expert made downward adjustments on all three most comparable sales ranging from $31,300 to $38,300.
While no separate adjustment was made for the slope on the subject property, the facts are clear to the court that the slope and the easement, in terms of their impediment to the Slaters’ rear yard, are indistinguishable. The adjustment made by the municipality’s expert for the easement more than adequately accounts for the impact of the slope given their proximity to one another.
Taking all adjustments into account, the sale prices of the municipality’s three most comparable sales were adjusted downward as follows: $688,800 for comparable one, $676,400 for compa *20 rabie two, and $667,500 for comparable three. By averaging the adjusted sales prices of these three comparable sales and rounding to the nearest ten thousand, the municipality’s expert arrived at a true value of the subject property of $680,000.
In Borough of Rumson v. Haran, 3 N.J.Tax 590, 592 (Tax 1981) the Tax Court held:
In this court there is a presumption of correctness in favor of the judgment of the county board of taxation ... The presumption is overcome by sufficient competent evidence of true value of the property ... Once such evidence is introduced, the presumption is overcome and ‘entirely disappears as a factor in the case.’ However, the complaining party still has the burden of ultimate persuasion as a factor in the case ..., in a trial de novo in the Tax Court.
[(citation omitted).]
The County Board lowered the assessment on the subject property from $529,300 to $460,000. Both the Slaters and the municipality have appealed that decision to the Tax Court. Both presented comparable sales in an effort to prove value.
The Slaters failed to make adjustments between their offered comparable sales and the subject property. This is due to the fact that Mr. Slater did not present expert testimony and did not qualify as an expert himself. The court finds that the Slaters’ comparable sales at their face value without adjustments are not “sufficient competent evidence of true value of the (subject) property.” [3]
The testimony of the municipality’s expert was entirely persuasive that the fan’ market value of the subject property on October 1, 1999, the relevant assessing date for the tax year 2000, was *21 $680,000. The court is satisfied that the municipality has presented sufficient competent evidence of the true value of the subject property. The municipality has met its burden of ultimate persuasion and in so doing, has overcome the presumption of correctness afforded to the County Board judgment.
The court analyzed the determined $680,000 true value of the subject property in relation to the original $529,300 assessment pursuant to Chapter 123. Dividing the assessed value ($529,300) by the true value ($680,000) the court arrives at an assessment to true value ratio of 77.83%. While this ratio is below the average ratio (81.47%), it is well within the lower limit of the common level range (69.25%) pursuant to Chapter 123.
Accordingly, for the reasons stated above, the Slaters’ complaint is dismissed. Judgment is hereby entered on the municipality’s counter-claim, reinstating the original assessment for the subject property for tax year 2000. The Tax Court Administrator shall enter judgment as follows:
Land $192,300
Improvements $337,000
Total $529,300

A tenant’s right to maintain a tax appeal was set forth in an amendment to Tax Court R 8:5-3(a)(8) after the decision in Village Supermarkets, Inc. The *13 revised rule requires “[aj tenant who files a complaint to contest a local property tax assessment, ..., [to] serve a copy of the complaint on the record owner of the property.” (Emphasis added).

 A true value of approximately $565,000 for the subject property can be calculated based upon the Judgment of the Monmouth County Tax Board. In their Petition of Appeal to the Monmouth County Tax Board, the Slaters requested an assessment that would equate to a true value of about $385,000. The Slaters did not offer an estimate of value of $385,000 during the Tax Court *17 trial. Mr. Slater did state that said value would not be acceptable if the Slaters were to sell the subject property. However, Mr. Slater testified that a sales price of $565,000 would be acceptable.

 Taken at face value, the Slaters’ comparable sales are more supportive of the municipality's case than their own. Assuming arguendo, if the court accepts the sales price of comparable sale three (i.e., $592,000 (the lowest of the three sales)) as the true market value of subject property, then by applying Chapter 123, the court arrives at an assessment to true value ratio of 89.33%. Such a ratio, while exceeding the average ratio of 81.74%, would not exceed the 93.69% upper limit of the common level range. Mr. Slater, however, indicated that comparable sales one and two, both with higher sales prices, were in fact more comparable to the subject property. If the average of the those two sale prices (i.e., $643,250) is accepted as the true value of the subject property, the assessment to true value ratio is 82.28%, still well within the upper limit of the common level range.