**TAX COURT OF NEW JERSEY**



JOSHUA D. NOVIN
Judge

Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

October 24, 2025

Mr. and Mrs. Ho Kim
19 Lloyd Road
Ho-Ho-Kus, New Jersey 07423

Timothy J. Wiss, Esq.
Wiss Law P.C.
345 Kinderkamack Road
Westwood, New Jersey 07675

Re:     <u>Kim, Ho & Yong v. Ho-Ho-Kus Borough</u>
        Docket No. 009677-2023

Dear Mr. and Mrs. Kim and Mr. Wiss:

This letter constitutes the court's opinion following trial in the above-captioned matter. Plaintiffs, Ho Kim and Yong Kim (plaintiffs), challenge the 2023 tax year assessment on plaintiffs' single-family residence.

For the reasons stated herein, the court finds that the subject property's ratio of assessed value to true value, for the 2023 tax year, falls within the upper limit and lower limit of Ho-Ho-Kus Borough's Chapter 123 corridor. Accordingly, plaintiffs are not entitled to relief from the 2023 tax assessment and the court will enter judgment dismissing plaintiff's complaint.

## I.     Procedural history and factual findings

Plaintiffs are the owners of the single-family residence located at 19 Lloyd Road, Ho-Ho-Kus Borough, Bergen County, New Jersey. The property is identified on Ho-Ho-Kus Borough's ("defendant") municipal tax map as block 704, lot 19 (the "subject property").

Plaintiffs filed a petition of appeal with the Bergen County Board of Taxation (BCBT)






challenging the subject property's 2023 tax year assessment.  On August 2, 2023, the BCBT issued

a Memorandum of Judgment ("Judgment") affirming the assessment.  The BCBT mailed the

Judgment on August 11, 2023.

On or about September 27, 2023, plaintiffs timely filed a complaint with the Tax Court

contesting the Judgment and the subject property's 2023 tax year assessment.

The subject property's tax assessment, defendant's average ratio of assessed value to true

value, and the subject property's implied equalized value is set forth below:

| Valuation date | Total assessment | Average ratio of assessed to true value | Implied equalized value |
|---|---|---|---|
| 10/1/2022 | $457,100 | 80.16% | $570,235 |

During trial, plaintiffs, self-represented litigants, offered testimony and submitted

comparable sales information for eight single-family residences sold in Ho-Ho-Kus.  Defendant

offered no evidence, instead relying on the validity of the subject property's 2023 tax assessment.

Based on the evidence presented, the court concludes that the subject property is a Cape

Cod style home constructed in approximately 1949, situated on a 0.1944-acre lot.  The home

possesses a gross living area of 1,376 square feet, consisting of 2 bedrooms and 2 full bathrooms.

## II. Conclusions of law

### a. Presumption of validity

"Original assessments and judgments of county boards of taxation are entitled to a

presumption of validity."  MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J.

Tax 364, 373 (Tax 1998).  "Based on this presumption, the appealing taxpayer has the burden of

proving that the assessment is erroneous."  Pantasote Co. v. Passaic City, 100 N.J. 408, 413 (1985)

(citing Riverview Gardens v. North Arlington Bor., 9 N.J. 167, 174 (1952)).  "The presumption of






correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Twp. v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value; that is, evidence "definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105 (1952). Thus, at the close of plaintiff's proofs, the court must be presented with evidence which raises a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376.

At the close of plaintiffs' proofs, defendant moved to dismiss this matter under R. 4:37-2(b), arguing that plaintiffs failed to overcome the presumption of validity.

Plaintiffs are not appraisers nor real estate valuation experts, but rather are self-represented litigants, and thus, are precluded from offering valuation opinions and applying adjustments to the comparable sales data. See N.J.R.E. 702; N.J.R.E. 703. However, as this court has observed, taxpayers "are not required to provide an expert witness and an appraisal report [at trial]. [Thus, a] taxpayer would appear to be at a grave disadvantage against an appraisal expert's testimony along with an appraisal report." Cohn v. Livingston Twp., 18 N.J. Tax 429, 433 (Tax 1999); see also Siegfried O. v. Holmdel Twp., 20 N.J. Tax 8, 18 (Tax 2002) (concluding that "the use of expert testimony and appraisal reports to prove value in tax appeals is optional, not mandatory . . . litigants are not required to produce an expert witness or an appraisal report").

Moreover, this matter is assigned to the Tax Court's Small Claims Division permitting hearings to be conducted

> informal[ly], and the judge may receive evidence as the judge deems appropriate for a determination of the case, except that all testimony shall be given under oath. A party may appear on the party's own behalf or by an attorney or by any other person as may be provided by the Rules of the Supreme Court.






[N.J.S.A. 2B:13-15.]

Our Rules of Court further emphasize that in the Small Claims Division,

> . . . the hearing shall be informal and the court may hear such testimony and receive such evidence as it deems necessary or desirable for a just and equitable determination of the case. All testimony shall be given under oath and a verbatim record shall be made of the proceeding.

[R. 8:11(b).]

This court adopts, as succinctly expressed by Judge Kahn, that the court should "construe[] said statute and rule as authorizing the Tax Court to consider reliable evidence from a pro se litigant, even though such evidence is not derived from expert opinion." Cohn, 18 N.J. Tax at 433.

Moreover, although the presumption of validity is applied equally to trials involving self-represented litigants and trials where attorneys and qualified valuation experts have been retained, the court is nonetheless mindful that the cogent evidence threshold, and the parameters for consideration of the evidence presented, when faced with a R. 4:37-2(a) motion, is modest. When evaluating whether the evidence presented meets the cogent evidence standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995)).

Here, plaintiffs presented evidence of eight comparable sales of single-family residences that sold in Ho-Ho-Kus between October 2021 and August 2022. The comparable sales range in size from 1,399 to 2,265 square feet, possess 1½ to 2 full bathrooms, contain land areas from 0.18






acres to 0.32 acres, and bore construction dates from 1940 to 1963.[1] The sale prices for the eight comparable single-family residences ranged from $600,000 to $688,000, or between $281.46 to $491.78 per square foot of living area.

Therefore, although plaintiffs' evidence was limited, insofar that no market data was presented accounting for differences between the subject property and the comparable properties, gauging the evidence presented against the liberal standards embodied under R. 4:37-2(b), the court found that plaintiffs produced cogent evidence sufficient to overcome the presumption of validity. Accordingly, the court denied defendant's motion and placed statement of reasons on the record.

However, concluding that the presumption of validity has been overcome does not equate to a finding that the subject property's 2023 tax year assessment is erroneous. The court must then "turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co. v. Edison Twp., 127 N.J. 290, 312 (1992). Here, although the proofs, when measured against the liberal standards to be employed in evaluating a motion under R. 4:37-2(b), were sufficient to overcome the presumption of validity at the close of plaintiffs' case-in-chief, "the burden of proof remain[s] on the taxpayer . . . to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote Co., 100 N.J. at 413).

b.    Valuation approach

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the

---

[1] Plaintiffs did not provide any evidence of the number of bathrooms in comparable sales 6, 7, and 8.






comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001) (citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 1996), certif. denied, 168 N.J. 291 (2001)). "[T]he answer as to which approach should predominate depends upon the facts in the particular case." WCI-Westinghouse, Inc. v. Edison Twp., 7 N.J. Tax 610, 619 (Tax 1985), aff'd, 9 N.J. Tax 86 (App. Div. 1986).

Plaintiffs relied on the sales comparison approach to derive an estimate of the subject property's true or market value. The court finds that the sales comparison approach is the most appropriate method to determine the subject property's true or market value.

1.  Sales comparison approach

The sales comparison approach derives an opinion of market value "by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract." The Appraisal of Real Estate at 377. The sales comparison approach involves a "comparative analysis of properties" and requires the expert to focus on the "similarities and differences that affect value . . . which may include variations in property rights, financing, terms, market conditions and physical characteristics." Id. at 378. "When data is available, this [approach] is the most straight forward and simple way to explain and support an opinion of market value." Greenblatt v. Englewood City, 26 N.J. Tax 41, 53 (Tax 2009) (citing Appraisal Institute, The Appraisal of Real Estate, 300 (13th ed. 2008)).

a.  Plaintiffs' evidence

As set forth above, plaintiffs offered evidence of eight comparable sales of single-family residences sold in Ho-Ho-Kus between October 2021 and August 2022.

The following chart identifies the eight comparable sales and sets forth basic details of each property relied upon by plaintiffs:






| Sale | Address | Sales price | Sale date | Square feet | Bathrooms | Age | Lot size | Price per square foot (PPSF) |
|------|---------|-------------|-----------|-------------|-----------|-----|----------|------------------------------|
| 1 | 325 Hollywood Ave. | $600,000 | 8/22/2022 | 1,488 | 1.5 | 1963 | 0.18 | $403.23 |
| 2 | 1 Gordon Road | $605,500 | 8/12/2022 | 1,592 | 1.5 | 1953 | 0.24 | $380.34 |
| 3 | 100 Ross Place | $625,000 | 6/24/2022 | 1,428 | 2 | 1953 | 0.22 | $437.68 |
| 4 | 31 Prescott Road | $650,000 | 4/28/2022 | 1,574 | 2 | 1953 | 0.15 | $412.93 |
| 5 | 8 Addison Place | $650,000 | 2/18/2022 | 1,762 | 1.5 | 1952 | 0.32 | $368.90 |
| 6 | 947 Washington Ave. | $637,500 | 10/26/2021 | 2,265 | Unknown | 1951 | 0.272 | $281.46 |
| 7 | 93 Arbor Drive | $650,000 | 10/17/2021 | 1,864 | Unknown | 1953 | 0.2433 | $348.71 |
| 8 | 10 Crescent Place | $688,000 | 4/6/2022 | 1,399 | Unknown | 1940 | 0.1818 | $491.78 |

      b.     Court's analysis

At the outset, the court cautions that plaintiffs did not confer with the sellers, the purchasers, the real estate salesperson/brokers, or the attorneys for any of the eight comparable sale transactions that they utilized. Thus, the court has reason to question the accuracy of the sale data and whether these sales are trustworthy and reliable indicators of fair market value. A pivotal aspect of the sales comparison approach is "verify[ing] the integrity of the [sales] information by 'confirming that the data obtained is factually accurate and that the transactions reflect arm's-length market considerations.'" VBV Realty, LLC v. Scotch Plains Twp., 29 N.J. Tax 548, 561 (Tax 2017) (quoting The Appraisal of Real Estate at 381); see also N.J.S.A. 2A:83-1.

The comparable sales approach involves investigation and research of the competitive marketplace for "information on properties that are similar to the subject property." The Appraisal of Real Estate at 381. "Evidence of comparable sales is effective in determining value only where there is a substantial similarity between the properties." Venino v. Borough of Carlstadt, 1 N.J. Tax 172, 175 (Tax 1980), aff'd o.b., 4 N.J. Tax 528 (App. Div. 1981).

By definition, comparability does not require properties to be identical, "differences between a comparable property and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the






value of the other." U.S. Life Realty Corp. v. Jackson Twp., 9 N.J. Tax 66, 72 (Tax 1987). However, plaintiffs did not offer any data from the marketplace upon which the court could reasonably extract adjustments to be applied to the comparable sales. The court is mindful that, "adjustments must have a foundation obtained from market-derived sources or objective data and not be based on subjective observations and/or personal experience." VBV Realty, LLC, 29 N.J. Tax at 571. In sum, adjustments "must have a foundation obtained from the market. . . ." Greenblatt, 26 N.J. Tax at 55.

Here, the court emphasizes that there are some noteworthy distinguishing features between plaintiffs' comparable sales and the subject property, which may have played a role in their respective purchase prices:

### 1. Gross Living Area

The court highlights that plaintiffs' comparable sales 5, 6, and 7, possess significantly greater gross living area than the subject property. The subject property consists of 1,376 square feet of gross living area. Comparable sale 5 contains 1,762 square feet of gross living area or 28% more living area than the subject property. Comparable sale 6 contains 2,265 square feet of gross living area, or 65% more living area than the subject property. Comparable sale 7 contains 1,864 square feet of gross living area, or 35% more living area than the subject property.

### 2. Lot Size

The court further highlights that plaintiffs' comparable sales 5, 6, and 7, also possess greater lot sizes than the subject property. The subject property consists of 0.1944 acres. Comparable sale 5 possesses 0.32 acres, comparable 6 possesses 0.272 acres, and comparable sale 7 possesses 0.2433 acres.

Unfortunately, as stated above, plaintiffs offered no meaningful marketplace data to enable






the court to extract and apply adjustments to the comparable sales to account for these material differences.  Therefore, for the above reasons, the court finds that plaintiffs comparable sales 5, 6, and 7 are not competitive in the marketplace with, and comparable to the subject property.

However, the court finds that plaintiffs comparable sales 1, 2, 3, 4, and 8 share several key and meaningful attributes with the subject property.  Comparable sale 1 possesses 1,488 square feet, 1½ full bathrooms, a 0.18-acre lot size, and was built in 1963.  Comparable sale 2 possesses 1,592 square feet, 1½ full bathrooms, a 0.24-acre lot size, and was built in 1953.  Comparable sale 3 possesses 1,428 square feet, 2 full bathrooms, a 0.22-acre lot size, and was built in 1953.  Comparable sale 4 possesses 1,574 square feet, 2 full bathrooms, a 0.15-acre lot size, and was built in 1953.  Comparable sale 8 possesses 1,399 square feet, a 0.1818-acre lot size, and was built in 1940.

Therefore, the court finds that plaintiffs comparable sales 1, 2, 3, 4, and 8, share several key similar characteristics with the subject property and thus, are competent and credible evidence of the subject property's true or market value as of the October 1, 2022 valuation date.

### 3. Reconciliation/conclusion of true or market value

"The trial judge as the factfinder is not bound by the opinion valuation of the experts on either side.  Just as a jury, a judge may adopt 'so much of it as appears sound, reject all of it, or adopt all of it.'"  Riorano, Inc. v. Weymouth Twp., 4 N.J. Tax 550, 564 (Tax 1982) (quoting State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932)).

The court affords the greatest weight to comparable sale 1 ($403.23 PPSF), comparable sale 3 ($437.68 PPSF), and comparable sale 8 ($491.78 PPSF), as these comparable sales are the closest in gross living area, age, and lot size to the subject property.  The court affords less weight to comparable sale 2 ($380.34 PPSF) and comparable sale 4 ($412.93 PPSF), as these properties






possess the greatest differences in gross living area from the subject property. Accordingly, the court concludes that the subject property's true market value, as of the October 1, 2022 valuation date, is $577,920 (1,376 square feet x $420.00 PPSF).

4.    Application of Chapter 123 Ratio

Having reached a conclusion of the subject property's true or market value, the court will turn its attention to a determination of the correct assessment for the 2023 tax year.

Under N.J.S.A. 54:51A-6(a), commonly referred to as Chapter 123, when the court is satisfied in a non-revaluation year by the evidence presented "that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property. . . ." N.J.S.A. 54:51A-6(a). This process involves application of the Chapter 123 common level range. N.J.S.A. 54:1-35a(b). Expressed as a formula, tax assessment/true value = ratio.

For the 2023 tax year, the ratio of assessed value, $457,100, to true value, $577,920, yields a ratio of 79.09% ($457,100 / $577,920 = 79.09%), which falls squarely between defendant's 2023 tax year Chapter 123 common level range upper limit (92.18%) and lower limit (68.14%). Consequently, no reduction in the subject property's 2023 tax year assessment is warranted.

**III.  Conclusion**

Accordingly, for the above-stated reasons, contemporaneous herewith the court shall enter judgment dismissing plaintiffs' 2023 complaint

Very truly yours,


Hon. Joshua D. Novin, J.T.C.




