NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
-------------------------------------------------------x
TRUSTEES PRINCETON UNIVERSITY       :
BY TENANT TAXAPAYER UBS,            :   TAX COURT OF NEW JERSEY
SUCCESSOR TO CREDIT SUISSE,         :   DOCKET NO:  002634-2025
                                    :
          Plaintiff,                :
                                    :
     v.                             :
                                    :
TOWNSHIP OF PLAINSBORO,             :
                                    :
          Defendant.                :
                                    :
-------------------------------------------------------x
```

Decided June 16, 2026.

Peter Davidson for plaintiff (The Davidson Legal Group, LLC, attorneys).

Matthew X. Tantum for defendant (DiFrancesco Bateman Kunzman, Davis, Lehrer & Flaum, P.C., attorneys).

CIMINO, J.T.C.

Attorneys are "an intimate and trusted and essential part of the machinery of justice, an 'officer of the court' in the most compelling sense." In re Hinds, 90 N.J. 604, 616 (1982) (quoting In re Sawyer, 360 U.S. 622, 666 (1959) (Frankfurter, J., dissenting)). They identify claims and defenses, file suit if necessary, gather the appropriate discovery, and ultimately settle or litigate a matter to conclusion. Without skilled attorneys, our system of justice would grind to a halt. The public

would quickly lose confidence in not only the Judiciary but our governmental institutions in general. Confidence in our justice system is especially important for tax appeals because every case involves a governmental entity.

The dispute here deals with the ability and extent to which one side can discover why the opposing attorney brought a claim on a client's behalf. Such a discovery request must balance the important policy considerations of the work-product privilege with our broad discovery rules. Both considerations are fundamental to effectuating our system of justice.

Taxpayer, Trustees Princeton University by tenant taxpayer UBS, successor to Credit Suisse, appeals the property tax assessment for a legacy data center located on 700 College Road East in the municipality, Township of Plainsboro, and designated on the tax maps as Block 701, Lot 12. After the taxpayer filed the complaint, the municipality served discovery. In a supplemental interrogatory, the municipality requested:

> Set forth the <u>exact methodology</u> utilized by Plaintiff in determining that the subject property's tax assessment <u>was incorrect</u> for the tax year under appeal including a written description of any <u>mathematical calculations</u> involved with the utilization of said methodology. (Emphasis added).

The taxpayer objected to the extent the interrogatory intrudes upon the work-product privilege. The township responded that discovery is broad and if the work-

product privilege does indeed apply, the taxpayer must provide a privilege log listing any disputed documents.  After some back and forth, the taxpayer did indicate:

> This is an obsolete data center built when Ronald Reagan was President or George Bush.  It's a legacy center.  There is little to no demand for a facility such as this which is why it is being shuddered [sic] in the future.  Further, the conversion to office is prohibitively expensive as corridors and windows would have to be installed.  We are not going to reveal how we are going to prepare for Trial or how or what aspects of the building we will emphasize.  Our objection stands.

The parties now present their dispute to the court.

There is an inherent tension in our litigation procedures.  On one hand, "[o]ur rules for discovery . . . are designed to insure that the outcome of litigation in this State shall depend on its merits in the light of all of the available facts, rather than on the craftiness of the parties or the guile of their counsel." Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 338 (1951).  In re McKenney, 167 N.J. 359, 370 (2001) (citing and quoting the same).  On the other hand, the work-product privilege addresses the "concern that without adequate protection of the product of an attorney's work, justice and clients' best interests would be undermined." O'Boyle v. Borough of Longport, 218 N.J. 168, 189 (2014).

Our Court Rules strike the proper balance of these competing doctrines. "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning

3

the litigation."[1] R. 4:10-2(c). However, keeping in mind the foregoing protection, "[a] party may obtain discovery . . . prepared in anticipation of litigation . . . by or for another party or [their] representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Ibid. Thus, even if some work-product is discoverable (i.e., certain interviews, see Medford v. Duggan, 323 N.J. Super. 127, 137-38 (App. Div. 1999)), the thought processes of the attorney and other representatives are not. Jenkins v. Rainner, 69 N.J. 50, 55 (1976); O'Boyle v. Borough of Longport, 426 N.J. Super. 1, 10 (App. Div. 2012), aff'd, 218 N.J. 168 (2014); Laporta v. Gloucester Cty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 264 (App. Div. 2001).

This court is fortunate to have a bar which is well versed in the subject area of tax appeals. The attorneys have a good feel for when there is a claim or defense and when there is not. At oral argument, the municipality confirmed it was seeking, not so much the basis for a reduction, but why the taxpayer's attorney filed the complaint. The court has serious concerns that such a question invades the thought

---

[1] The original work-product rule was codified in 1948. O'Boyle, 218 N.J. at 189. See also Crisafulli v. Pub. Serv. Coordinated Transp., 7 N.J. Super. 521, 522 (Cty. Ct. 1950) (quoting text of original Rule 3:26-2). New Jersey's approach has been considered broader than the federal standard first articulated in Hickman v. Taylor, 329 U.S. 495 (1947). O'Boyle, 218 N.J. at 189, Paladino v. Auletto Enters., Inc., 459 N.J. Super. 365, 371 (App. Div. 2019) (both decisions

4

process of the attorney and any appraisal expert preliminarily consulted. This is not to say that a taxpayer does not have an obligation to eventually provide competent and most times expert proof to establish the basis for a reduction. See Cohn v. Township of Livingston, 18 N.J. Tax 429, 433 (Tax 1999) (grave disadvantage without expert). Rather, this is to say that the level of proofs available at the beginning of a case is not necessarily enough to come up with an exact methodology with mathematical calculations.

The assessment list in many jurisdictions is filed on January 10, and notices are sent shortly thereafter. N.J.S.A. 54:4-35, -38.1. Generally, the taxpayer only has until April 1 to file an appeal. N.J.S.A. 54:3-21. Obtaining exact methodology with mathematical calculations would require a taxpayer to hire an expert and then hope the report is completed before the filing date. This ignores the expertise and knowledge of the attorneys bringing these claims. See also R. 1:4-8 (complaint must be brought for proper purposes). From an economic perspective, if counsel is handling the case on a contingent fee basis, counsel does not want to file a loser. And, if counsel is handling the matter on an hourly basis, counsel does not want to have the reputation of filing losing cases costing their clients. Moreover, as a matter of practicality, many times clients seek counsel on the eve of a filing deadline. If experienced counsel believes there is merit to a case and files the case in good faith, that is satisfactory.

Discovery will flesh out the issues. It is not uncommon that what appears to be a strong case at first glance turns out to be a terrible case, and what appears to be a marginal case at the onset, turns out to be a spectacular case. That is why we have a robust discovery process that allows for the broad revelation of facts held by the parties. However, it is not a process designed to look into the minds of why attorneys file complaints. That is an invasion of the work-product privilege.

The rules contemplate that expert reports are prepared and "supplied []after" the filing of suit. R. 4:17-4(e). And, during the preparation of expert reports, disclosure of "communications between counsel and the expert constituting the collaborative process in preparation of the report, including all preliminary or draft reports" is limited.[2] R. 4:10-2(d)(1). Moreover, the opinions of experts not testifying at trial are generally not discoverable. R. 4:10-2(d)(3). As shown again, the rules protect the work-product of attorneys and other representatives.

The court is not going to allow an interrogatory question to invade an attorney's thought process as to the filing of a complaint. The theory supporting an assessment reduction may evolve after discovery is exchanged and the attorney speaks to an expert appraiser who is retained to testify at trial. There are various

---

[2] "Discovery of communications between an attorney and any expert retained or specifically employed by that attorney is limited to facts and data considered by the expert in rendering the report." R. 4:10-2(d)(1).

ways to value a property. <u>Alpine County Club v. Borough of Demarest</u>, 354 N.J. Super. 387, 389 (App. Div. 2002). Knowing the exact methodology and the mathematical calculations of the attorney's thought process does not further the search for the truth since the attorney is not testifying – the expert is. At the time of trial, the municipality will certainly have the opportunity to cross-examine the expert and test the validity of the expert's methodology.

The municipality's demand for an exact methodology with mathematical calculations is a double-edged sword. Many times, municipalities file counterclaims.[3] Generally, the Legislature has only given municipalities the latter of April 1 or twenty days after service of the complaint to file a counterclaim. N.J.S.A. 54:3-21(a). The Supreme Court admonished municipalities some forty years ago that "a municipality should undertake to appeal its own assessment only when it has good cause to believe the assessment does not reflect true value, and not simply to achieve a tactical advantage over, or even strategic parity with, a taxpayer that has independently appealed the assessment." <u>F.M.C. Stores Co. v. Borough of</u>

---

[3] Generally speaking, in most cases the municipality has an automatic counterclaim by virtue of the way tax appeals are determined. <u>Campbell Soup Co. v. City of Camden</u>, 16 N.J. Tax 219, 228 (Tax 1996). However, except in rare instances, a counterclaim is required in a revaluation year in which the statutory procedure for determining tax appeals does not apply. <u>Id.</u> at 229. In addition, having an affirmative counterclaim even when the statutory procedure applies serves to prevent the taxpayer from unilaterally withdrawing a complaint before judgment is entered in accordance with our rules. <u>Id.</u> at 228.

7

Morris Plains, 100 N.J. 418, 427 (1985). In other words, the municipality must turn "square corners" when dealing with the taxpaying public. Id. at 426.

With the crush of complaint filings requiring review for potential counterclaims, with many filed especially close to the April 1 filing deadline, it would be a Herculean effort for the municipality to review each complaint to come up with the exact methodology through mathematical calculations as to whether a counterclaim must be filed. While the filing of a counterclaim should not be a rote exercise, the good faith filing of a counterclaim does not require exact methodology with mathematical calculations.[4] See R. 1:4-8 (requiring filing for a proper purpose).

The parties are entitled to discovery and the exact methodology and mathematical calculations as developed by the experts which will testify at trial. Experts are usually necessary in these cases, and many times are the only testimony received by the court. See Cohn, 18 N.J. Tax at 433 (discussing necessity of expert testimony). The experts, both appraisers and assessors, that appear before this court are well-skilled and serve an important purpose and function in reaching a fair and equitable settlement of tax disputes.

Both sides will get a fair chance to conduct discovery. However, disclosure of the exact methodology with mathematical precision of why an attorney filed a

[4] Considering that in most cases there is an automatic counterclaim, the impact of a counterclaim may be overstated. See Campbell Soup, 16 N.J. Tax at 228-29 (discussing automatic counterclaim).

complaint or counterclaim is not only unnecessary, but an invasion of the work-product privilege.

For the foregoing reasons, the taxpayer is not required to answer the interrogatory since it seeks work-product. However, once an expert for trial is retained by the taxpayer, the substance of the question should be addressed by the expert's report.