# TAX COURT OF NEW JERSEY

JOSHUA D. NOVIN
Judge



Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

June 13, 2024

Mr. and Mrs. Daniel Yang
91 Lincoln Street
Montclair, New Jersey 07042

Dominic DiYanni, Esq.
Eric M. Bernstein & Associates, LLC
34 Mountain Boulevard, Building A
Warren, New Jersey 07059-4922

> Re:  Yang, Daniel & Lucy v. Montclair Twp.
> Docket No. 001830-2023

Dear Mr. and Mrs. Yang and Mr. DiYanni:

This letter constitutes the court's opinion following trial in the above matter. Plaintiffs challenge the 2023 tax year assessment on their single-family residence.

For the reasons stated more fully below, the court affirms the 2023 tax year assessment.

## I.  Procedural history and factual findings

Daniel Yang and Lucy Yang ("plaintiffs") are the owners of the single-family residence located at 91 Lincoln Street, Montclair Township, Essex County, New Jersey. The property is identified on Montclair Township's ("Montclair") municipal tax map as block 4102, lot 17 (the "subject property").

For the 2023 tax year, the subject property was assessed as follows:

| | |
|---|---|
| Land: | $ 210,000 |
| Improvements: | $ 833,100 |
| Total | $1,043,100 |

Montclair's average ratio of assessed to true value, commonly referred to as the Chapter






123 ratio, for the 2023 tax year is 72.47%, with an upper limit of 83.34% and lower limit of 61.60%. See N.J.S.A. 54:1-35a(a). When the average ratio is applied to the subject property's 2023 tax year assessment, it has an implied equalized value of $1,439,354.

On or about March 6, 2023, plaintiffs filed a direct appeal complaint with the Tax Court contesting the subject property's 2023 tax year assessment.[1] Montclair did not file a counterclaim.

The matter was tried to conclusion over one day. During trial, plaintiffs, self-represented litigants, offered testimony and submitted comparable sales information on four single-family residences sold in Montclair. In response, Montclair offered valuation testimony from a State of New Jersey certified general real estate appraiser, who was accepted by the court as an expert in the property valuation field ("Montclair's expert"). Montclair's expert prepared an appraisal report dated April 9, 2024, containing comparable sales information on five single-family residences sold in Montclair.

The subject property is a 2½ story Victorian-style colonial, single-family residence constructed in 1897, and situated on a .2754-acre rectangular shaped lot. It was "gut-renovated and modernized" between 2020 and 2021. Plaintiffs purchased the subject property for $1,230,000, on or about February 27, 2021.

The interior and exterior photographs of the subject property depict a renovated and restored single-family residence containing many high-end finishes, features, and amenities. The home possesses 3,248 square feet of gross living area consisting of 5 bedrooms, 3 full bathrooms, and 2 half-bathrooms.[2] The first floor of the home features a foyer, an eat-in kitchen, dining room,

---

[1] Plaintiffs misidentified the appeal case type as "Added or Omitted Direct Appeal." Based on the evidence presented, the court finds that the appeal case type should be "Direct Appeal." Thus, under R. 4:9-2, the court hereby amends plaintiffs' pleadings to conform to the evidence.
[2] One of the half bathrooms is in the subject property's partially finished basement.





living room, half-bathroom, butler's pantry, mudroom, laundry room, and a family room/study with French doors and a tray ceiling. The second floor of the home includes the master bedroom, an ensuite master bathroom, two additional bedrooms, and an additional full bathroom. The third floor includes two bedrooms and one full bathroom. The subject property's kitchen features new white kitchen cabinetry with crown molding and quartz countertops, a faux marble porcelain tile backsplash, a 7' island with a quartz countertop (featuring pendant lighting, cabinetry, and seating for four), and stainless-steel appliances. The butler's pantry features new white cabinetry, a quartz countertop, a sink, and a wine refrigerator. The laundry room includes dark wood cabinetry and a farmhouse-style sink. The dining room features a stained-glass window. The living room features a brick fireplace with a wood mantle. The master ensuite bathroom features a double vanity, walk in shower and bathtub, all finished with porcelain faux marble tile. New hardwood flooring is installed throughout the home. The basement is partially finished with a family room/playroom, a half-bathroom, 9' ceilings, recessed lighting, and wood composite flooring. In addition, the subject property also features a large front porch with Trex composite decking, a vinyl fenced-in backyard (approximately six-feet high), a rear brick patio, and a two-car detached garage.[3]

The subject property is in southeast Montclair, approximately one block from the border of Glen Ridge, two blocks from Glenfield Park, and 0.5 miles from the Glen Ridge commuter rail station.

The subject property is in Montclair's R-1, Single Family Residential Zone district. The subject property's use as a single-family home is a legally permitted and conforming use within

---

[3] The detached garage is in the right rear corner of the subject property's backyard. However, the subject property's driveway does not extend to the garage. Rather, there is approximately seventy-five feet of grassy area between the end of the driveway and the garage.






the zoning district.  It is in Flood Hazard Zone X, denoting an area of minimal flooding risk.

## II.   Conclusions of law

### A.   Presumption of validity

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998).  "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. Passaic City, 100 N.J. 408, 413 (1985) (citing Riverview Gardens v. North Arlington Bor., 9 N.J. 167, 174 (1952)).  "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Twp. v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998).  A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value; that is, evidence "definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105 (1952).  Thus, at the close of plaintiff's proofs, the court must be presented with evidence which raises a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376.  "Only after the presumption is overcome with sufficient evidence . . . must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" Greenblatt v. Englewood City, 26 N.J. Tax 41, 52 (Tax 2011) (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

At the close of plaintiffs' proofs, Montclair moved to dismiss this matter under R. 4:37-2(b), contending that plaintiffs failed to overcome the presumption of validity.  Specifically, Montclair maintained that plaintiffs failed to present a "sufficient sample of credible comparable sales sold approximate to the [assessment] date."  Montclair asserted plaintiffs' comparable sales were in either inferior locations, had gross living areas diverse from the subject property's,






possessed greater or fewer bathrooms, and thus, required market-based adjustments to produce credible evidence of value. However, because plaintiffs did not offer market-based evidence to account for these deviations, Montclair argued that the court should wholly reject plaintiffs' comparable sales. In sum, Montclair maintained that plaintiffs failed to present "cogent evidence" and thus, did not raise a debatable question as to the validity of the subject property's tax assessment. The court denied Montclair's motion and placed a statement of reasons on the record. The court will briefly repeat the basis for the denial of Montclair's motion.

Here, admittedly, plaintiffs are not appraisers nor real estate valuation experts, but rather are taxpayers and self-represented litigants. Thus, they are precluded from offering opinion testimony of the subject property's value and consequently, are unable to apply adjustments to the comparable sales. See N.J.R.E. 702; N.J.R.E. 703. However, as keenly noted by Judge Bianco, "the use of expert testimony and appraisal reports to prove value in tax appeals is optional, not mandatory. Indeed, the Tax Court has held that litigants are not required to produce an expert witness or an appraisal report." Siegfried O. v. Holmdel Twp., 20 N.J. Tax 8, 18 (Tax 2002). In short, our court rules do not require taxpayers "to provide an expert witness and an appraisal report [at trial]." Cohn v. Livingston Twp., 18 N.J. Tax 429, 433 (Tax 1999).

Moreover, matters assigned to the Tax Court's Small Claims Division permit hearings to be conducted,

> informal[ly], and the judge may receive evidence as the judge deems appropriate for a determination of the case, except that all testimony shall be given under oath. A party may appear on the party's own behalf or by an attorney or by any other person as may be provided by the Rules of the Supreme Court.
>
> [N.J.S.A. 2B:13-15.]

The court rules further emphasize that in the Small Claims Division,

   

> the <u>hearing shall be informal and the court may hear such testimony and receive such evidence as it deems necessary or desirable for a just and equitable determination of the case</u>. All testimony shall be given under oath and a verbatim record shall be made of the proceeding.
>
> [R. 8:11(b) (emphasis added).]

Accordingly, this court adopted the view endorsed by Judge Kahn, interpreting "said statute and rule as authorizing the Tax Court to consider [any] reliable evidence from a pro se litigant, even though such evidence is not derived from expert opinion." Cohn, 18 N.J. Tax at 433.

Moreover, although the presumption of validity must be applied equally to trials involving self-represented litigants, and attorneys with duly qualified valuation experts, the court was nonetheless mindful that the cogent evidence threshold, and the parameters for consideration of the evidence presented, when faced with a R. 4:37-2(a) motion, are modest. When evaluating whether the evidence presented meets the cogent evidence standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995)).

Plaintiffs presented evidence of four single-family residences in Montclair that sold between September 2022 and November 2022. The comparable sales range in size from 2,332 to 4,146 square feet, possess between 3 full/1 half bathrooms and 4 full/1 half bathrooms, contain land areas from .16 acres to .49 acres, and, except for one sale, bear a similar construction date to the subject property, having been originally constructed between 1897 to 1923.[4] The unadjusted

---

[4] The exception was plaintiffs' comparable sale 3, a single-family residence newly constructed in 2022.






sale prices of the four comparable single-family residences was $997,500 to $1,210,000, or between $241 to $467 per square foot of living area.[5] The four comparable sales are located between 0.2 to 0.9 miles from the subject property.

Therefore, although plaintiffs were unable to present evidence that accounted for differences between the subject property and the four comparable sales, gauging the evidence presented against the liberal standards embodied under R. 4:37-2(b), the court found that plaintiffs produced cogent evidence sufficient to overcome the presumption of validity. Accordingly, for these reasons, the court denied Montclair's motion.

However, concluding that the presumption of validity has been overcome does not equate to a finding by the court that the subject property's 2023 tax assessment is erroneous. The court must then "turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co. v. Edison Twp., 127 N.J. 290, 312 (1992). Although the proofs, when measured against the liberal standards employed in evaluating a motion under R. 4:37-2(b), were sufficient to overcome the presumption of validity at the close of plaintiffs' case-in-chief, "the burden of proof remain[s] on the taxpayer . . . to demonstrate that the judgment [or assessment] under review was incorrect." Id. at 314-15 (citing Pantasote Co., 100 N.J. at 413).

    B.    Highest and best use

"For local property tax purposes, property must be valued at its highest and best use." Entenmann's Inc. v. Totowa Borough, 18 N.J. Tax 540, 545 (Tax 2000). The determination of the highest and best use of a property is "the first and most important step in the valuation process."

---

[5] Having a mean value of $370 per square foot, and median value of $386 per square foot.





Ford Motor Co. v. Edison Twp., 10 N.J. Tax 153, 161 (Tax 1988), aff'd, 127 N.J. 290 (1992). The highest and best use analysis involves the "sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive." Clemente v. South Hackensack Twp., 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015).

Here, Mr. Yang testified that the subject property is in a single-family residential neighborhood, and since 2021, has been utilized by his family as a single-family residence. Moreover, Montclair's expert opined that the highest and best use of the subject property, as vacant, is as a single-family residence, and as improved, was continuation of its present use. After hearing the testimony from Mr. Yang and Montclair's expert, the court finds that the subject property's highest and best use, as vacant, and as improved, is as a single-family residence.

C. Valuation approach

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001) (citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 1996), certif. denied, 168 N.J. 291 (2001)). "[T]he answer as to which approach should predominate depends upon the facts in the particular case." WCI-Westinghouse, Inc. v. Edison Twp., 7 N.J. Tax 610, 619 (Tax 1985), aff'd, 9 N.J. Tax 86 (App. Div. 1986).

Both plaintiffs and Montclair's expert relied on the sales comparison or market approach to estimate the subject property's true or market value. The court finds that the sales comparison or market approach is the most appropriate method to determine the subject property's true or market value, as of the October 1, 2022 valuation date.

   

1.      Sales comparison approach

The sales comparison approach derives an estimated market value "by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract." The Appraisal of Real Estate at 377. The sales comparison approach requires the expert to focus on the "similarities and differences that affect value . . . which may include variations in property rights, financing, terms, market conditions and physical characteristics." Id. at 378. "When data is available, this [approach] is the most straight forward and simple way to explain and support an opinion of market value." Greenblatt, 26 N.J. Tax at 53 (citing Appraisal Institute, The Appraisal of Real Estate, 300 (13th ed. 2008)).

a.      Plaintiffs' evidence

Plaintiffs identified four single-family home sales that they deemed comparable to the subject property:

| Comparable | #1 | #2 | #3 | #4 |
|---|---|---|---|---|
| Location | 100 Willowdale Ave. Montclair, NJ | 106 Gates Ave. Montclair, NJ | 446 Washington Ave. Montclair, NJ | 96 Harrison Ave. Montclair, NJ |
| Sale date | 11/25/2022 | 9/1/2022 | 9/15/2022 | 10/17/2022 |
| Sale price | $1,090,000 | $997,500 | $1,130,000 | $1,210,000 |
| Price p.s.f. | $467 p.s.f. | $241 p.s.f. | $426 p.s.f. | $345 p.s.f. |
| G.L.A. | 2,332 sq. ft. | 4,146 sq. ft. | 2,655 sq. ft. | 3,512 sq. ft. |
| Bedrooms/Baths | 5/3 Full/2 Half[6] | 6/3 Full/1 Half | 4/3 Full/1 Half[7] | 6/3 Full/1 Half |
| Lot size | .25 acres. | .28 acres | .16 acres | .49 acres |
| Built/Renovated | 1897/2022 | 1920/1975[8] | 2022/2022 | 1923/2000 |
| Basement | Partially finished | Unfinished | Finished | Unfinished |
| Garage | None | 2-car detached | 2-car detached | 2-car detached |

---

[6] Montclair's property record card states that plaintiffs' comparable sale 1 has two half-bathrooms.
[7] A disparity exists regarding the number of full bathrooms in plaintiffs' comparable sale 3. Montclair's property record card states that it contains 3 full and 1 half bathroom. However, the Garden State Multiple Listing Service ("GSMLS") report recites that it has "4.1BA's." However, the GSMLS interior photographs in the trial record contain photographs of only 3 full bathrooms.
[8] A disparity exists regarding the renovations to plaintiffs' comparable sale 2. Montclair's property record card reflects that it was last renovated in 1975. However, the GSMLS report recites that it has a "remodeled kitchen." The GSMLS photographs in the trial record depict a recently remodeled kitchen. However, the balance of the photographs depicts a 1975's era home.






Mr. Yang further testified that he telephoned both the seller's and buyer's real estate agents for each of the four comparable sales transactions to verify that each sale was an arms-length transaction.[9] To arrive at their proposed revised assessment for the subject property, plaintiffs averaged the sale prices of the four comparable sales and multiplied that value by Montclair's Chapter 123 ratio for the 2023 tax year.

      b.    Montclair's evidence

Montclair's expert identified five single-family residence sales that he deemed comparable to the subject property. Montclair's expert testified that he verified the sales with a real estate agent involved in each transaction. The following chart identifies the five comparable sales relied upon by Montclair's expert:

| Comparable | #1 | #2 | #3 | #4 | #5 |
|---|---|---|---|---|---|
| Location | 100 Willowdale Ave. Montclair, NJ | 46 Franklin Pl. Montclair, NJ | 10 Melrose Pl. Montclair, NJ | 34 Tuxedo Rd. Montclair, NJ | 126 Chestnut St. Montclair, NJ |
| Sale date | 11/25/2022 | 8/9/2022 | 2/28/2022 | 8/2/2022 | 8/18/2022 |
| Sale price | $1,090,000 | $1,250,000 | $1,600,000 | $1,455,000 | $1,580,000 |
| Price p.s.f. | $467 p.s.f. | $474 p.s.f. | $476 p.s.f. | $480 p.s.f. | $485 p.s.f. |
| G.L.A. | 2,332 sq. ft. | 2,636 sq. ft. | 3,363 sq. ft. | 3,034 sq. ft. | 3,259 sq. ft. |
| Rooms/Baths | 10/3 Full/1 Half | 10/3 Full/0 Half | 11/3 Full/1Half | 11/2 Full/1 Half | 10/3Full/1 Half |
| Lot size | .25 acres | .36 acres | .27 acres | .24 acres | .32 acres |
| Built/Renovated | 1897/2022 | 1907/2018 | 1907/2016 | 1922/2006 | 1880/2022 |
| Basement | Part. Finished | Part. finished | Unfinished | Unfinished | Unfinished |
| Garage | None | None | 1 car detached | 2 car detached | 2 car detached |

Montclair's expert applied the following upwards adjustments to the comparable sales: (i) (i) $21,000, to account for the lack of a half bathroom; (ii) $42,000, to account for the lack of a full bathroom; and (iii) $175.00 per square foot of gross living area. In Montclair's expert's opinion, no upwards adjustment was warranted for the lack of a partially finished basement in comparable sales 3, 4, and 5. In addition, Montclair's expert testified that after reviewing sales

---

[9] Mr. Yang left a message for, but did not speak with, the buyer's real estate agent for his comparable sale 1.






data and speaking with real estate salespeople in the Montclair marketplace, he could not derive an accurate adjustment for the lack of a garage or the presence of only a 1-car garage. Accordingly, he applied no upwards adjustment to comparable sales 1, 2, and 3, despite those sales not having a 2-car detached garage like the subject property. However, Montclair's expert expressed that when he prepared his appraisal report valuing the subject property for the 2022 tax year, he applied a $25,000 upwards adjustment to any comparable sales that lacked a garage.[10]

After applying his half bathroom, full bathroom, and gross living area adjustments, Montclair's expert concluded the following adjusted sale prices: (i) $1,250,300, for comparable sale 1; (ii) $1,378,100, for comparable sale 2; (iii) $1,600,000, for comparable sale 3; (iv) $1,497,000, for comparable sale 4; and (v) $1,580,000, for comparable sale 5. Reconciling the adjusted sales prices, Montclair's expert concluded the subject property's estimated market value is $1,455,000, as of the October 1, 2022 valuation date.[11]

### 2. Court's analysis

The comparable sales approach involves investigation and research of the competitive marketplace for "information on properties that are similar to the subject property." The Appraisal of Real Estate at 381. "Evidence of comparable sales is effective in determining value only where there is a substantial similarity between the properties." Venino v. Borough of Carlstadt, 1 N.J. Tax 172, 175 (Tax 1980), aff'd o.b., 4 N.J. Tax 528 (App. Div. 1981).

However, by definition, comparability does not require properties to be identical, "differences between a comparable property and the subject property are anticipated. They are

---

[10] The court's review of its May 24, 2023 letter opinion regarding the subject property's 2022 tax year appeal disclosed that Montclair's expert applied a $40,000 garage disparity adjustment.
[11] Montclair's expert testified that he deducted $15,000 from the subject property's indicated value to account for the subject property's driveway not extending to the 2-car detached garage.






dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other." U.S. Life Realty Corp. v. Jackson Twp., 9 N.J. Tax 66, 72 (Tax 1987). Nonetheless, "adjustments must have a foundation obtained from market-derived sources or objective data and not be based on subjective observations and/or personal experience." VBV Realty, LLC, 29 N.J. Tax at 571. In sum, adjustments "must have a foundation obtained from the market. . . ." Greenblatt, 26 N.J. Tax at 55.

a. Plaintiffs' comparable sales

The court emphasizes that there are several notable and distinguishing features between plaintiffs' comparable sales, and the subject property, which may have played a pivotal role in establishing their respective sale prices.

1. Location

As stated above, the subject property is located approximately five blocks and 0.5 miles from Glen Ridge's commuter rail station, an approximate 11-minute walk.

Plaintiffs' comparable sale 2 is located approximately 1.2 miles from Glen Ridge's commuter rail station, an approximate 28-minute walk.[12] Moreover, effective cross-examination disclosed that plaintiffs' comparable sale 2 is located across the street from a skilled nursing care facility and two large apartment complexes.

Plaintiffs' comparable sale 3 is located approximately 0.9 miles from Glen Ridge's commuter rail station, an approximate 18-minute walk.[13] Moreover, effective cross-examination

---

[12] Comparable sale 2 is also located approximately 0.9 miles from Montclair's Bay Street commuter rail station, an approximate 20-minute walk.
[13] Comparable sale 3 is also located approximately 1.0 miles from Montclair's Bay Street commuter rail station, an approximate 21-minute walk.






disclosed that plaintiffs' comparable sale 3 is located approximately two houses away from a retail bank and a commercial center along Orange Road.

Plaintiffs' comparable sale 4 is located approximately 1.4 miles from Glen Ridge's commuter rail station, an approximate 31-minute walk.[14] Moreover, effective cross-examination disclosed that plaintiffs' comparable sale 4 is located on a street featuring a double yellow with a potential increased traffic flow.

Thus, plaintiffs' comparable sales 2, 3, and 4 are located approximately 2 to 3 times further away from the Glen Ridge commuter rail station than the subject property. Moreover, plaintiffs' comparable sales 2, 3, and 4 are in areas of Montclair that possess neighborhood characteristics different from the subject property. These location and neighborhood character differences may require an upwards adjustment to account for these variances. The court further observes that plaintiffs' comparable sales 2, 3, and 4 possess the lowest sale price values, per square foot of gross living area, amongst plaintiffs' four comparable sales. Although the court cannot conclusively state that the above factors contributed to their lower values per square foot of gross living area, it is a well-settled principle of property valuation that location and neighborhood characteristics are factors that drive market value. However, plaintiffs offered no market derived data or evidence that would permit the court to accurately determine the appropriate location or neighborhood characteristic adjustments warranted to plaintiffs' comparable sales 2, 3, and 4.

2.    Legal rights

In deriving the true or market value of land encumbered by an easement, our courts have endorsed the view that an adjustment must be formulated and applied to the unimpeded land value

---

[14] Comparable sale 4 is located approximately 1.3 miles from Montclair's Bay Street commuter rail station, an approximate 27-minute walk.

 

to account for the property rights conveyed or surrendered under the easement. See Ridgewood v. Bolger Foundation, 104 N.J. 337 (1986); Englewood Cliffs v. Estate of Allison, 69 N.J. Super. 514, 529 (App. Div. 1961).

Here, effective cross examination revealed that plaintiffs' comparable sale 3 has a shared driveway and easement on or across a portion of the property.[15] Therefore, an upwards adjustment would likely be warranted to account for the presence of the easement on plaintiffs' comparable sale 3. However, plaintiffs offered no market derived data or evidence that would permit the court to accurately determine the market adjustment necessary to account for the easement.

### 3. Condition

As detailed above, the subject property "was gut-renovated and modernized" immediately prior to plaintiffs' purchase in or about February 2021.

Conversely, although appropriately maintained, Montclair's property record card for plaintiffs' comparable sale 2 reflects an "average" interior condition, with an effective age of 1975. Although the GSMLS listing states that it has a "remodeled kitchen" and the photographs support such statement, no other renovations or improvements appear to have been undertaken to the property for some time. The court's review of the GSMLS photographs in the trial record reveal several dated improvements, most notably in the master bathroom (bathtub, shower, mirror, and trim), dining room (wallpaper and trim), and den (flooring and trim). The court further highlights that the GSMLS listing conspicuously makes no mention of the condition of the other 2 full and 1 half bathrooms in that property and no photographs of same were included in the trial

---

[15] Cross-examination disclosed that a twelve-foot driveway easement exists, however, it was unclear from the record and tax maps how much of that easement area was on or across comparable sale 3 and how much was on or across the adjoining property's land.

   

record. Thus, leaving the court to question whether those bathrooms are in a substantially similar dated condition as the master bathroom.

Importantly, plaintiffs have offered no market data or evidence permitting the court to apply the appropriate condition adjustments to plaintiffs' comparable sale 2.

4. Lot size

The court underscores that plaintiffs' comparable sale 4 contains a .49-acre lot size, almost double the .27-acre lot size of the subject property. When engaging in the sales comparison approach, it is pivotal to not only research the market and extract sales that are like the property being appraised, but to also identify or "select the most relevant units of comparison used by participants in the market." Appraisal Institute, The Appraisal of Real Estate, 355 (15th ed. 2020). Those units of comparison may include the "price per acre, price per square foot [of living area], price per front foot, price per dwelling, etc." Ibid. Thus, the price per acre or lot size may be a factor that drives value in a marketplace.

However, plaintiffs offered no market data or evidence permitting the court to determine if the lot size for comparable sale 4 materially impacted its value, or what the appropriate lot size adjustment is to account for that deviation between the subject property and plaintiffs' comparable sale 4.

Accordingly, for the above-stated reasons the court finds plaintiffs' comparable sales 2, 3, and 4 are not credible evidence of the subject property's true or market value.

b. Montclair's expert's comparable sales

After researching the marketplace and collecting data, an appraiser must scrutinize the data by focusing on the "similarities and differences that affect value . . . which may include variations in property rights, financing, terms, market conditions and physical characteristics." The






Appraisal of Real Estate at 378. The appraiser must establish appropriate "elements of comparison for a given appraisal through market research and support those conclusions with market evidence." Id. at 390. Adjustments "must have a foundation obtained from the market" and not be based merely on subjective observations and/or personal experience. Greenblatt, 26 N.J. Tax at 55. Hence, the probative value of the comparable analysis hinges upon the similarities which can be drawn between the properties, and the objective market data utilized to support any adjustments thereto. The weight to be accorded expert testimony relative to adjustments "depends upon the facts and reasoning which form the basis of the opinion. An expert's conclusion can rise no higher than the data providing the foundation." Inmar Associates v. Edison Twp., 2 N.J. Tax 59, 66 (Tax 1980) (citing City of Passaic v. Gera Mills, 55 N.J. Super. 73 (App. Div. 1959)).

As detailed above, Montclair's expert relied on five comparable single-family residence sales. Montclair's expert's comparable sales contained gross living areas ranging from 916 square feet smaller to 115 square feet larger than the subject property. To account for these disparities, Montclair's expert conducted a paired sales analysis.

In general, a paired sales analysis collects data "on nearly identical properties [and analyzes them] to isolate and estimate a single characteristic's effect on value." Appraisal Institute, The Dictionary of Real Estate Appraisal, 142 (5th ed. 2010). However, a paired data analysis must "'be developed with extreme care to ensure that the properties are truly comparable and that other differences do not exist' . . . Care must be taken 'when relying on pairs of adjusted prices because the difference measured may not represent the actual difference in value to the characteristic being studied.'" Palisadium Management Corp. v. Borough of Cliffside Park, 29 N.J. Tax 245, 272 (Tax 2016) (quoting The Appraisal of Real Estate at 398), aff'd, 456 N.J. Super. 293 (App. Div. 2018).

Montclair's expert testified that, to discern his gross living area adjustment, he analyzed






two single-family residences that recently sold in Montclair: (i) 5 The Fairway, Montclair; and (ii) 16 The Fairway, Montclair. According to Montclair's expert, the homes were the same age, in substantially the same condition, possessed similar lot sizes, possessed a similar number of full and half bathrooms, and sold within five months of each other. In his opinion, the only distinguishing factor was their gross living area, 5 The Fairway possessing 3,431 square feet of gross living area, and 16 The Fairway possessing 2,860 square feet of gross living area. Thus, Montclair's expert attributed the $100,000 difference in sale price between the two properties to the 571 square foot difference in gross living area, for a value of $175.13 per square foot of gross living area. Montclair's expert then applied a $175.00 per square foot gross living area adjustment to his comparable sales 1 and 2 to account for disparities in gross living area.[16]

Cross-examination of Montclair's expert disclosed that he did not inspect the interior of either property. Rather, he conferred with the selling agent for 16 The Fairway and reviewed the GSMLS photographs for 16 The Fairway and 5 The Fairway. During cross-examination, Montclair's expert acknowledged that the bathrooms in 5 The Fairway "appear to be slightly newer based on the photographs that I am seeing in my file." In his estimation, two of the bathrooms in 16 The Fairway have some renovations, while two of the bathrooms were not renovated at all. However, despite his observed differences in the condition of the bathrooms, in Montclair's expert's opinion, "both of these properties are very comparable to one another, in all respects, other than square footage."

The court's review of the GSMLS photographs offered during trial discloses that the

---

[16] Montclair's expert's comparable sale 3 was 115 square feet larger than the subject property and comparable sale 4 was 214 square feet smaller than the subject property. However, Montclair's valuation expert did not apply a gross living area adjustment to either of those sales.





kitchens in 5 The Fairway and 16 The Fairway are comparable, each featuring commercial styled stainless-steel appliances, wood cabinetry, recessed lighting, ceramic tile flooring, and solid surface (granite, marble, or quartz countertops). However, the photographs reflect that the full bathrooms in 16 The Fairway are inferior in certain respects to the bathrooms in 5 The Fairway. Although two of the full bathrooms in 16 The Fairway feature certain modern finishes and plumbing fixtures, the photograph of the third full bathroom depicts a bathroom that has not been updated for several years.[17] The GSMLS photographs further demonstrate that three of the full bathrooms in 5 The Fairway have been renovated, while the half-bathroom appears not to have been recently renovated.

Additionally, the court's review of Montclair's property records for 16 The Fairway and 5 The Fairway attached to Montclair's expert's appraisal report, discloses that 16 The Fairway contains only one updated bathroom. Conversely, Montclair's property record card for 5 The Fairway states that it has three updated bathrooms and an updated kitchen.

Although the court observes that 5 The Fairway and 16 The Fairway are not identical in all respects, the court does find that the properties are located on the same street, possess similar lot sizes, were constructed during the same year, each feature a two-car garage, and have partially finished basements. Accordingly, although Montclair's expert's gross living area paired sales analysis was inexact, the court will accept Montclair's expert's gross living area adjustment of $175.00 per square foot.

Moreover, to discern his full and half bathroom adjustments, Montclair's expert conducted a paired sales analysis of: (i) 99 Essex Avenue, Montclair; and (ii) 31 Essex Avenue, Montclair.

---

[17] No photographs of the half bathroom in 16 The Fairway was offered into evidence.




According to Montclair's expert, these properties sold within seventeen days of each other, and were the same age, in substantially the same condition, possessed similar lot sizes, had two car garages, and each possessed a similar number of full bathrooms. In his opinion, the only distinguishing factor was that 99 Essex Avenue possessed no half bathroom and 31 Essex Avenue possessed a half-bathroom. Thus, Montclair's expert attributed the $21,000 difference in sale price to the presence of the half bathroom. Accordingly, to account for the lack of a half bathroom in his comparable sales, Montclair's expert applied a $21,000 adjustment, and to account for a full bathroom in his comparable sales, Montclair's expert applied a $42,000 adjustment.

The court finds Montclair's expert's half bathroom and full bathroom paired sales analysis to be credible, reasonable, and supported by market evidence. Accordingly, the court accepts his half bathroom and full bathroom adjustments.

Based on the court's review of the evidence, the court finds that Montclair's expert's comparable sale 1, 100 Willowdale Avenue (which is the identical sale as plaintiff's comparable sale 1) and Montclair's expert's comparable sale 2, 46 Franklin Place share several key and meaningful attributes with the subject property. 100 Willowdale Avenue and 46 Franklin Place are located approximately 0.2 miles from the subject property and are only 0.2 miles further away from the Glen Ridge commuter rail station than the subject property. The subject property has a lot size of 0.27-acres, 100 Willowdale has a lot size of 0.25-acres, and 46 Franklin Place has a lot size of .36-acres. The subject property, 100 Willowdale Avenue, and 46 Franklin Place are all colonial styled homes and were constructed in or around the late 1890's or early 1900's. Importantly, like the subject property, the listing for 100 Willowdale Avenue states that it was "fully gut renovated" and "is as close to new construction as you will find in Montclair." Similarly, Montclair's property record card for 46 Franklin Place states that it was renovated with






four updated bathrooms and an updated kitchen. The subject property, like 100 Willowdale Avenue, features three above-grade full bathrooms and one above-grade half-bathroom. Also like the subject property, 46 Franklin Place features three above-grade full bathrooms. [18] The subject property, 100 Willowdale Avenue and 46 Franklin Place each feature partially finished basements with below-grade bathrooms. Finally, the property record card for 100 Willowdale Avenue and 46 Franklin Place each reflect the interior condition as "good."

However, the court highlights that Montclair's expert's comparable sale 3 has approximately 115 square feet more of gross living area than the subject property. Therefore, the court will apply a downward adjustment of $20,125 (115 sq. ft. x $175) to Montclair's expert's comparable sale 3, for an adjusted sale price of $1,579,875 ($1,600,000 - $20,125).

Finally, the court emphasizes that Montclair's expert's comparable sale 2 was originally listed on the GSMLS for $1,050,000 and sold for $1,250,000 or approximately 20% above the listing price. Similarly, Montclair's expert's comparable sale 3 was originally listed on the GSMLS for $1,275,000 and sold for $1,600,000 or approximately 26% above the listing price. This data lends support to the testimony of Montclair's expert, that a recent published article found that Montclair is "not only the hottest market in New Jersey, [but] it is the fourth hottest market in the country." According to Montclair's expert, based on discussions with real estate salespeople in the marketplace, the lack of inventory for single-family homes in Montclair has led to bidding wars and driving up single-family residence sale prices.

---

[18] Montclair's expert applied an upwards adjustment of $21,000 to account for the lack of an above-grade half bathroom in 46 Franklin Place. However, the court notes that the GSMLS listing for 46 Franklin Place states that it has four full bathrooms, but one of those bathrooms is in the basement. According to Montclair's expert, he did not account for, or apply adjustments for, the presence of any below-grade bathrooms.






However, the court finds that Montclair's expert's comparable sale 4 and comparable sale 5 are in the Walnut Street Business District, and thus, are in a different neighborhood than the subject property. The court emphasizes that comparable sale 4 is approximately 1.27 miles away from the subject property and comparable sale 5 is approximately 1.63 miles away from the subject property. Accordingly, for these reasons, the court finds Montclair's expert's comparable sale 4 and comparable sale 5 are not reliable indicators of the subject property's value, and therefore, attributes them no weight.

c.     Reconciliation of true or market value

"The trial judge as the factfinder is not bound by the opinion valuation of the experts on either side. Just as a jury, a judge may adopt 'so much of it as appears sound, reject all of it, or adopt all of it.'" Riorano, Inc. v. Weymouth Twp., 4 N.J. Tax 550, 564 (Tax 1982) (quoting State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932)).

Here, based on the similarities of the properties, the court finds that plaintiffs' comparable sale 1/Montclair's expert's comparable sale 1 (100 Willowdale Avenue), and Montclair's expert's comparable sale 2 (46 Franklin Place), are the most credible and reliable evidence of the subject property's true or market value. Affording the greatest weight (40%) to each of the adjusted sale prices of plaintiffs' comparable sale 1/Montclair's expert's comparable sale 1 ($1,250,300), and Montclair's expert's comparable sale 2 ($1,378,100), and less weight (20%) to Montclair's expert's comparable sale 3 ($1,575,000), the derived estimated value of the subject property is $1,370,000. However, the court finds Montclair's expert's testimony credible, that a downward adjustment of $15,000 must be applied to the subject property's derived value to account for the driveway not extending to the two-car detached garage. Therefore, the court finds that the true or market value of the subject property, as of the October 1, 2022 valuation date, is $1,355,000.






      d.    Application of Chapter 123 Ratio

Having reached a conclusion of the subject property's true or market value as of the October 1, 2022 valuation date, the court will determine the correct assessment for the 2023 tax year.

Under N.J.S.A. 54:51A-6(a), commonly referred to as Chapter 123, when the court is satisfied in a non-revaluation year by the evidence presented "that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property. . . ." N.J.S.A. 54:51A-6(a). This process involves application of the Chapter 123 common level range. N.J.S.A. 54:1-35a(b). Expressed as a formula, tax assessment/true value = ratio.

For the 2023 tax year, the ratio of assessed value, $1,043,100, to true value, $1,355,000, yields a ratio of 76.98% ($1,043,100/$1,355,000 = 76.98%), which falls between Montclair's 2023 tax year Chapter 123 common level range upper limit (83.34%) and lower limit (61.60%). Consequently, no reduction in the subject property's 2023 tax year assessment is warranted.

## III. Conclusion

Accordingly, for the above-stated reasons, the court affirms the subject property's 2023 tax year assessment and shall enter a judgment consistent with this result contemporaneously herewith.

Very truly yours,


Hon. Joshua D. Novin, J.T.C.




