**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1576-24

LORI LYNN MARTINOLICH,
LORI LYNN MARTINOLICH
Administrator ad Prosequendum
for the ESTATE OF PAUL
MARTINOLICH,

     Plaintiff-Respondent,

v.

NEW JERSEY STATE POLICE,
STATE OF NEW JERSEY, NEW
JERSEY STATE BOARD OF SOCIAL
WORK EXAMINERS, BOARD OF
MARRIAGE AND FAMILY THERAPY
EXAMINERS, TROOPER A. ROCK
#7535, TROOPER A. BERTUCCI #7970,
TROOPER R. SANCHEZ #8085,
TROOPER C.O. BONILLA #7973,
CAPTAIN HOWARD EVILNESS #454,
TROOPER M. TAVARES #7947,
TROOPER L. RODRIGUEZ #7536,
TROOPER N. OTERO #8057,
TROOPER T. PRESTON #5392,
TROOPER J.J. DELORENZO #6673,
PRIME HEALTHCARE, ST. CLAIRE
HOSPITAL, STATE OF NEW JERSEY
GREYSTONE PARK PSYCHIATRIC
HOSPITAL, CAREWELL HEALTH,

TROOPER T. MATTHEWS #7409,

    Defendants,

and

COOPERMAN BARNABAS
MEDICAL CENTER,

    Defendant-Appellant.

_____

Argued September 30, 2025 – Decided October 28, 2025

Before Judges Sumners, Susswein and Augostini.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6582-23.

John M. Hockin, Jr., argued the cause for appellant Cooperman Barnabas Medical Center (Ronan, Tuzzio & Giannone, PC, attorneys; John M. Hockin, Jr., of counsel and on the briefs; Robert M. Pacholski, on the briefs).

Desha Jackson (Desha Jackson Law Group, LLC) argued the cause for respondent.

PER CURIAM

This interlocutory appeal arises in a civil action brought by plaintiff Lori Lynn Martinolich against Cooperman Barnabas Medical Center (Cooperman) and several other defendants. Plaintiff claims she suffered personal injuries caused by hospital staff who allegedly assaulted and harassed her. She also

claims she suffered emotional distress from witnessing the hospital's alleged mistreatment of her adult son. Cooperman appeals Law Division orders denying its motion to dismiss the complaint and denying reconsideration. Cooperman argues that the trial court erred by not dismissing the complaint with prejudice because plaintiff failed to provide an affidavit of merit as required by N.J.S.A. 2A:53A-27. Cooperman's affidavit of merit argument presupposes that plaintiff's complaint alleges that Cooperman breached the professional standard of care it owed to her son as a hospital patient. Cooperman further asserts that plaintiff lacks standing to pursue claims related to her son's treatment because he has been declared incapacitated and she is not his court-appointed guardian. Cooperman also contends the complaint should have been dismissed for failure to name her son as an indispensable party.

Aside from challenging the trial court's decision to deny its motion to dismiss the amended complaint, Cooperman argues that the trial court erred in granting plaintiff's motion to compel disclosure of her son's personal health information. Cooperman maintains that it cannot comply with the trial court's discovery order without violating the Health Insurance Portability and Accountability Act (HIPAA) given that plaintiff's son has been declared incapacitated and his appointed legal guardian was not noticed on plaintiff's

A-1576-24

discovery motion and has not otherwise given authorization for the disclosure of protected information.

After reviewing the record in light of the governing legal principles, we affirm the trial court order denying reconsideration of Cooperman's motion to dismiss the complaint. With respect to plaintiff's failure to provide an affidavit of merit, we agree with the trial court that, while plaintiff's amended complaint was unartfully drafted, the fundament of her case against Cooperman does not involve medical negligence; rather, it hinges on allegations of intentional misconduct and ordinary negligence beyond the scope of N.J.S.A. 2A:53A-27. We affirm the trial court's ruling with the caveat that plaintiff is precluded from pursuing any claim that requires proof of professional negligence.

We also are satisfied plaintiff has standing to bring this action. She has pled a sufficient stake in the matter and adequate adverseness to satisfy the requirements of New Jersey's standing jurisprudence. On the question of whether plaintiff's son is an indispensable party, the record shows that Cooperman raised this issue for the first time in its motion for reconsideration, and the trial court did not address this contention in its decision denying reconsideration. We therefore remand for the trial court to decide this issue in the first instance.

A-1576-24

As to the discovery order, we are constrained to reverse. We do so without prejudice to plaintiff's ability to obtain her son's protected health information through an appropriate HIPAA authorization, or through a discovery motion made on notice to the legal guardian. We add that in addressing this or any other discovery issue, including disputes over the scope of discovery, the trial court shall be mindful that professional negligence claims are flatly precluded in this matter by reason of the fact that plaintiff has not produced a timely affidavit of merit.

I.

We discern the following pertinent facts and procedural history from the record. On October 5, 2023, plaintiff filed a 147-page amended complaint against Cooperman and others on behalf of herself as an individual and the Administrator Ad Prosequendum for the Estate of her deceased husband, Paul Martinolich.[1] The complaint raises the following causes of action against

_____

[1] The amended complaint names several other defendants including various New Jersey Government Agencies, individual State Police Officers, Healthcare Facilities, and fictitious parties. Plaintiff alleges several claims against these other defendants including, among others, racial and religious discrimination under the New Jersey Law Against Discrimination N.J.S.A. 10:5-12, racial profiling, negligent training/hiring/retention, intentional and negligent infliction of emotional distress, and wrongful death. Those claims are not pertinent to this appeal.

Cooperman: (1) negligence (count twelve); (2) intentional infliction of emotional distress (count thirteen); (3) negligent infliction of emotional distress (count fourteen); (4) vicarious liability and respondeat superior (count seventeen); and (5) civil conspiracy (count twenty-seven). Cooperman filed an answer to the amended complaint on November 7, 2023.

In a December 11, 2023 letter to the trial court, Cooperman requested a Ferreira[2] conference in accordance with the affidavit of merit statute, N.J.S.A. 2A:53A-27, and asserted that plaintiff was required to provide an affidavit of merit based on the allegations in the amended complaint. Plaintiff's counsel responded on December 11, 2023, explaining that plaintiff was "not making a claim of medical malpractice" and thus was not required to provide an affidavit of merit.

A Ferreira conference was initially scheduled for February 6, 2024, and was then rescheduled, adjourned, and ultimately cancelled. For reasons not set forth in the record, no conference was held.

---

[2] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154 (2003) (mandating an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions).

A-1576-24

Cooperman filed a motion to dismiss based on lack of standing, failure to state a claim, and failure to provide an affidavit of merit. Oral argument on the motion to dismiss was heard on April 26, 2024. The trial court denied Cooperman's motion, explaining in its oral decision:

> As I said, the—the (inaudible) issue here is intentional infliction of emotional distress. (Inaudible) the plaintiff alleges (inaudible) handled by (inaudible) the defendants and/or other agents, servants, or employees.
>
> Intentional infliction has four elements. The plaintiff— the defendant (inaudible) intentionally. The defendant's conduct was so outrageous and (inaudible) in a[n] extreme degree. This was done (inaudible) decency. It was atrocious and (inaudible) character. And, three, the defendant caused emotional distress. And the, four, the emotional distress was so severe, no reasonable person would be expected to endure it.
>
> I mean, this Court is familiar with—with allegations against hospitals, nurses, doctors, and so forth, having done 10 years worth of medicine malpractice work.
>
> This, however, is not a medical malpractice case. The allegations here really fall under general liability (inaudible) and—and what would be insurance coverage, not under medical malpractice (inaudible).
>
> I think . . . there has to be general allegations with— with negligence in the case, which I think there are in the complaint. There's no requirement [of] specificity (inaudible) while pleading, such as there is required to (inaudible) fraud or other—those kinds of allegations.

A-1576-24

Specificity . . . is not required. There has to be a general obligation here. Under [Rule] 4:62 the Court has to search the complaint for (inaudible) and would have to determine whether that risk is sufficient as pled. I believe there are sufficient facts pled on this particular matter in that regard.

An order denying the motion to dismiss was entered on April 29, 2024. On May 17, 2024 Cooperman filed a motion for leave to file an interlocutory appeal, which we denied on June 17, 2024.

On April 10, 2024 the Morris County Surrogate's Office issued Letters of Guardianship over plaintiff's son to Adam P. Dubeck, Esq., declaring the son to be mentally incapacitated.

On October 25, 2024 plaintiff filed a motion to compel Cooperman's responses to the December 15, 2023 discovery requests. On October 29, 2024 Cooperman filed a motion for reconsideration, or in the alternative, a motion to dismiss for failure to name a necessary party. On October 30, 2024, Cooperman filed a cross-motion for a protective order regarding plaintiff's discovery demands.

On December 6, 2024, the trial court entered an order, without hearing oral argument, denying Cooperman's motion for reconsideration or dismissal, and granting in part and denying in part plaintiff's motion to compel discovery. On December 19, 2024 Cooperman filed a motion for leave to appeal the three

trial court orders entered on December 6, 2024: denying reconsideration or dismissal for failure to name an indispensable party, granting in part and denying in part plaintiff's motion to compel discovery, and denying Cooperman's cross-motion for a protective order. In support of the motion for leave to appeal, Cooperman raised the following issues:

> Compliance with the Trial Court's December 6, 2024 Order would violate the Health Insurance Portability and Accountability Act.

> Compliance with the Trial Court's December 6, 2024 Order would violate the Morris County Surrogate's Court's April 10, 2024 Order.

> Plaintiff lacks standing, has failed to name an indispensable party, and has failed to provide the requisite [a]ffidavit of [m]erit.

We granted Cooperman's motion and this interlocutory appeal followed.

Cooperman contends in this appeal that the trial court erred in denying its motion to dismiss the complaint because (1) the complaint involves professional negligence and plaintiff failed to produce a required affidavit of merit; (2) plaintiff does not have standing to bring this action; and (3) plaintiff's son is an indispensable party. Cooperman further contends that compliance with the trial court's discovery order compelling production of the son's medical records

9

would violate both HIPAA and the Surrogate Court's order declaring plaintiff's son incapacitated and appointing his legal guardian.

## II.

We begin with Cooperman's contention that the trial court erred by not dismissing the amended complaint with prejudice because plaintiff failed to produce an affidavit of merit. Plaintiff has steadfastly maintained that her claim is not one of medical malpractice and so an affidavit of merit is not required. Plaintiff further argues that an affidavit of merit is not necessary because this case falls under the common knowledge exception to the affidavit of merit statute. In its reply-brief, Cooperman argues that plaintiff's opposition demonstrates that the underlying action alleges medical malpractice because plaintiff "has made allegations regarding the treatment her son received" at Cooperman Barnabas Medical Center. Cooperman asserts "[p]laintiff's allegations arise out of alleged care, treatment, hospital admissions, medication administration, and if considered, the use of restraints and refusal of transport/discharge related to her son." Accordingly, Cooperman argues, plaintiff's allegations invoke the professional standard of care and do not fall under the common knowledge exception.

A-1576-24

We begin our analysis of the parties' contentions by reviewing the governing legal principles. The purpose of the affidavit of merit statute is "'to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court.'" Ferreira, 178 N.J. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)). The statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person[3] in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
>
> [N.J.S.A. 2A:53A-27.]

When an affidavit of merit is required, failure to provide one is deemed a failure to state a cause of action. See A.T. v. Cohen, 231 N.J. 337, 346 (2017) (citing N.J.S.A. 2A:53A-29). Further, "[n]eglecting to provide an affidavit of

---

[3] A "licensed person" includes a "physician in the practice of medicine or surgery," "a registered professional nurse," and "a health care facility." N.J.S.A. 2A:53A-26(f), (i), (j).

merit" following the expiration of the statutory period "generally requires dismissal with prejudice." Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 422 (2010).

In Ferreira, the New Jersey Supreme Court mandated that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions. 178 N.J. 144, 154 (2003). The purpose of the conference is for the parties "to identify any failure to comply with the affidavit of merit statute in time to correct it within the statutory time limit." Id. at 423. Failure to hold a Ferreira conference, however, "will not serve to toll the statutory time frames." Id. at 426.

At the crux of this appeal, the law is well-settled that "an affidavit [of merit] will only be needed when the underlying harmful conduct involves professional negligence, implicating the standards of care within that profession." McCormick v. State, 446 N.J. Super. 603, 613-14 (App. Div. 2016). Three factors are relevant in analyzing whether the statute applies to a particular claim: (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is

12

the subject of the complaint fell outside acceptable professional or occupational standards or treatment practices" (standard of care). Couri v. Gardner, 173 N.J. 328, 334 (2002) (quoting N.J.S.A. 2A:53A-27).

Further, our Supreme Court in Couri made clear "[i]t is not the label placed on the action that is pivotal but the nature of the legal inquiry." Id. at 340. "[I]f the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession . . . an affidavit of merit is required for that claim, unless some exception applies." Ibid. (emphasis added). This approach is intended to "ensure that tort claims brought against licensed professionals that allege ordinary negligence, but not malpractice, will not be subject to the statute." Id. at 340-41.

We add that an exception to the statute known as the common knowledge exception applies to claims "in which the alleged conduct or failure to act, if accepted as true, would be readily recognizable, by a person of average intelligence, as a failure to exercise the appropriate standard of care." Cowley v. Virtua Health Sys., 242 N.J. 1, 8 (2020). In such cases the jury can supply the applicable standard of care "from its fund of common knowledge" and assess "the feasibility of possible precautions which the defendant might have taken to avoid injury to the plaintiff." Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961).

13

Considering the common knowledge exception, the New Jersey Supreme Court stated, "[t]he test of need of expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Cowley, 242 N.J. at 19 (citing Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)).

Here, the trial court explained why it found that an affidavit of merit was not required, stating "[t]his . . . is not a medical malpractice case. The allegations here really fall under general liability (inaudible) and—and what would be insurance coverage, not under medical malpractice (inaudible)."

Applying a de novo standard of review, we find no error in the trial court's conclusion that the fundament of plaintiff's claims involve allegations of intentional misconduct and ordinary negligence. Cf. Baskin, 246 N.J. at 171 (giving the plaintiff the benefit of liberality on review of a motion to dismiss, holding the "fundament of a cause of action" for intentional infliction of emotional distress may be gleaned from the allegations).

We acknowledge that scattered throughout plaintiff's 147-page complaint[4] there are gratuitous phrases that sound in the nature of medical negligence, including, for example, statements that her son's "medical needs were neglected" while in Cooperman's care, that Cooperman failed to "properly treat" him, that he was improperly "injected with antipsychotic narcotics," and that he was improperly transferred to another medical facility. However, in the factual introduction of her amended complaint, plaintiff alleges, "based on information and belief" that her son was "physically and sexually assaulted" while a patient at Cooperman. She further alleges that he was "abused and physically assaulted" at Cooperman, and that failure to remove him from Cooperman resulted in her son experiencing "tremors, being tied up, starvation, dehydration, and isolation, being tied to a bed, physical assault, sexual abuse, and deprivation of medical care, infected IV, seizure activity and being held against his own free will." Plaintiff states that she "had to endure emotional distress, watching her son's torture and demise."

---

[4] We note that the amended complaint was drafted by plaintiff personally before she was represented by her present counsel and could be characterized as a "speaking" complaint that includes unartful and surplus language. We nonetheless hold the complaint to the same standard of review as if it had been drafted by counsel. "[A] self-represented litigant is held to the same standards of compliance with our Court Rules." Mims v. City of Gloucester, 479 N.J. Super. 1, 4 (App. Div. 2024).

We find that plaintiff is categorically precluded from bringing any claims alleging professional negligence. Accordingly, to the extent she alleges, for example, her son was deprived of medical care and suffered an "infected IV," such claims are precluded. However, her claims that her son was physically assaulted and sexually abused, for example, sufficiently state a cause of action for general negligence or common knowledge based on bystander liability.

Had a timely Ferriera conference been convened, we expect that plaintiff's counsel would have amplified that plaintiff was making no claims of medical negligence—a position counsel has steadfastly maintained—and that language in the complaint that suggests otherwise should be redacted when considering the true fundament of plaintiff's case.

In sum, we conclude that while the affidavit of merit statute must be strictly enforced, its scope is narrow. Here, the amended complaint can be read not to require proof of a deviation from the professional standard of care that applies to hospitals. See Couri v. Gardner, 173 N.J. at 334 (2002). In reaching this conclusion, we are especially mindful of our Supreme Court's admonition that the goal of the statute is to "ensure that tort claims brought against licensed professionals that allege ordinary negligence, but not malpractice, will not be subject to the statute." Id. at 340-41.

We stress that our decision to affirm the trial court's ruling is a double-edged sword. Plaintiff may proceed to litigate both her claims of intentional misconduct and those that do not require proof of medical as distinct from ordinary negligence. But our affirmance also means that plaintiff is categorically precluded at trial and in the discovery process from pursuing any claim requiring proof of professional negligence. We trust the trial court, having already drawn the distinction between professional and ordinary negligence, will strictly enforce this prohibition as the case proceeds.

## III.

We next address the question of whether plaintiff has standing to bring this suit. Cooperman asserts that for all intents and purposes, plaintiff is bringing a claim on behalf of her son, which she cannot do because she is not his legal guardian. Plaintiff responds that her claims stem from injuries she herself suffered based on the conduct of Cooperman and its staff, therefore, she is not bringing a claim on behalf of her son. In its reply-brief, Cooperman argues that plaintiff's claims cannot survive despite her contention that she is only seeking damages that she herself suffered because she still must establish an underlying cause of action for negligence by proving that Cooperman breached its duty to plaintiff's son.

17

We begin our analysis by acknowledging the pertinent legal principles. "Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018). "Standing is a threshold requirement for justiciability," Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 421 (1991), and "refers to the plaintiff's ability or entitlement to maintain an action before the court." N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997).

"Standing analysis begins with Rule 4:26-1, which provides, '[e]very action may be prosecuted in the name of the real party in interest.'" Focazio v. Aboyoun, 481 N.J. Super. 153, 165 (App. Div.), cert. denied, 261 N.J. 152 (2025) (quoting Rule 4:26-1). Importantly, "New Jersey courts have taken a liberal approach to standing." Siegfried O. v. Holmdel Twp., 20 N.J. Tax 8, 11 (2002) (citing Dome Realty, Inc. v. City of Paterson, 150 N.J. Super. 448, 452 (App. Div. 1977). "To possess standing in a case, a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden Cnty., 170 N.J. 439, 449

(2002) (citing New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67-69 (1980)).

A.

We first consider whether plaintiff has standing with respect to her claim of negligent infliction of emotional distress. New Jersey courts recognize "indirect claims for negligent infliction of emotional distress" where an individual "experiences severe emotional distress when another person suffers serious or fatal injuries" because of a tortfeasor's negligence. Gendek v. Poblete, 139 N.J. 291, 296 (1995) (citing Portee v. Jaffee, 84 N.J. 88 (1980)). The theory underlying these claims is commonly referred to as "bystander" liability. See, e.g., Dunphy v. Gregor, 136 N.J. 99, 101 (1994) ("Bystander liability allows recovery for the emotional injury suffered by a person, who, as a bystander, witnesses the wrongful death or serious physical injury of another person with whom the bystander had a close, substantial, and enduring relationship").

Portee is the seminal case regarding bystander liability in this jurisdiction. To recover as a bystander, a plaintiff must establish the following elements: "'(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the

19

accident; and (4) resulting severe emotional distress.'" Moreland v. Parks, 456 N.J. Super. 71, 82 (App. Div. 2018) (quoting Portee, 84 N.J. at 101)).

Further, our Supreme Court has recognized that "severe mental and emotional harm, standing alone, can trigger Portee recovery." Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 78 (2011). Recovery is justified, for example, where the plaintiff observes "the kind of result that is associated with the aftermath of an accident, such as bleeding, traumatic injury, and cries of pain." Frame v. Kothari, 115 N.J. 638, 643 (1989) (citing Gates v. Richardson, 719 P.2d 193, 199 (Wyo. 1986)).

"What constitutes a 'familial relationship' is perforce a fact-sensitive analysis, driven by evolving social and moral forces." Id. at 83. "[I]t is a jury question whether the inter-personal bonds upon which the cause of action is based actually exist." Dunphy, 136 N.J. at 112. Courts rely on the following factors to determine whether a familial relationship exists: "(1) the duration of the relationship; (2) the degree of mutual dependence; (3) the extent of common contributions to a life together; (4) the extent and quality of shared experience; and (5) whether the plaintiff and the decedent (or seriously injured person) 'were members of the same household, their emotional reliance on each other, the particulars of their day to day relationship, and the manner in which they related

20

to each other in attending to life's mundane requirements.'" Moreland, 456 N.J. Super. at 85 (quoting Dunphy v. Gregor, 261 N.J. Super. 110, 123 (App. Div. 1992), aff'd, 136 N.J. 99 (1994)). "Central to a claim under bystander liability is the existence of an intimate familial relationship and the strength of the emotional bonds that surround that relationship." Id. at 111.

Applying the foregoing legal principles to the matter before us, we are satisfied that plaintiff's allegations against Cooperman for negligent infliction of emotional distress can be properly characterized as an action for bystander liability. We thus conclude plaintiff has standing to bring a Portee claim for the alleged harm she witnessed her son endure. Plaintiff is not required to bring a cause of action on behalf of her son because she is seeking damages for the emotional injuries she suffered as a bystander to her son's alleged mistreatment.

As discussed above, plaintiff alleges that her son was physically abused while a patient at Cooperman's facility and that she "had to endure emotional distress, watching her son's torture and demise." These allegations fall within the bounds of a Portee claim, in that plaintiff alleges severe emotional distress after witnessing the serious injury of a close relative allegedly caused by Cooperman's negligence. See Moreland, 456 N.J. Super. at 85. We are unpersuaded by Cooperman's argument that plaintiff lacks standing because she

21

is not her son's legal guardian. It is the "strength of the emotional bonds that surround that relationship" that are essential to a claim for bystander liability. Dunphy v. Gregor, 261 N.J. Super. at 111. Here, the strength of the parent-child relationship for purposes of standing analysis is not diluted simply because plaintiff was not named as her son's legal guardian.

## B.

We next consider standing in the context of plaintiff's claim of intentional infliction of emotional distress. "[T]o make out a prima facie case of intentional infliction of emotional distress, plaintiff must show that: (1) defendant acted intentionally; (2) defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;' (3) defendant's actions proximately caused [the plaintiff] emotional distress; and (4) the emotional distress was 'so severe that no reasonable [person] could be expected to endure it.'" Segal v. Lynch, 413 N.J. Super. 171, 191 (App. Div. 2010) (quoting Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366, (1988)).

Plaintiff's amended complaint alleges, among other claims, that on May 2, 2022, while visiting her son at Cooperman Newark Beth Israel Medical

Center, plaintiff was attacked by hospital staff who slammed a door on her hand and caught her foot in the door.[5] Plaintiff describes Cooperman's conduct as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Plaintiff further alleges that Cooperman's conduct caused her "economic damages and losses, severe emotional distress . . . and other intangible injuries."

Giving plaintiff the benefit of "every reasonable inference of fact," we are satisfied she has sufficiently pled the requirements for a claim of intentional infliction of emotional distress to survive a motion to dismiss. See Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citations omitted).

In sum, plaintiff has pled a sufficient stake in the matter and adequate adverseness to satisfy New Jersey's liberal approach to standing requirements. See Siegfried O., 20 N.J. Tax at 11. See also In re Camden Cnty., 170 N.J. at 449.

---

[5] Cooperman argues that plaintiff has combined the names of two hospitals— Newark Beth Israel Medical Center and Cooperman Barnabas Medical Center.

A-1576-24

IV.

We turn next to Cooperman's contention that the trial court erred in denying its motion to dismiss the amended complaint for failure to name an indispensable party. The record shows that Cooperman raised this issue for the first time in its motion for reconsideration.[6] The trial court, without hearing oral argument, denied the motion for reconsideration but made no specific mention of Cooperman's indispensable-party contention.

We offer no opinion on Cooperman's contention and remand for the trial court to decide in the first instance whether plaintiff's son is an indispensable party to this action. We do not retain jurisdiction.

V.

Finally, we address Cooperman's contention that the trial court abused its discretion in granting plaintiff's motion to compel discovery.[7] Cooperman argues that compliance with the court's December 6, 2024 order would violate HIPAA and the Morris County Surrogate Court's April 10, 2024 order, declaring

---

[6] "Filing a motion for reconsideration does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015) (citing Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). Despite the procedural anomaly, we consider Cooperman's argument as raised on appeal.

[7] The parties disagree as to whether this issue was raised below.

A-1576-24

plaintiff's son mentally incapacitated and issuing letters of guardianship to an attorney.

Cooperman contends that it has "not received any HIPAA authorizations on behalf of [plaintiff's son], nor has Cooperman received verification that [he] is on notice of this matter or that his medical records were requested and ordered to be produced," and that his guardian has not "authorized the disclosure of [his] health information."

As a general proposition, we owe substantial deference to a trial court's disposition of a discovery dispute. See Brugaletta v. Garcia, 234 N.J. 225, 240 (2018). "[A]ppellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79–80 (2017) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). Here, however, the trial court did not address whether the appointed legal guardian must either authorize or be put on notice of any disclosure of personal health information. In these circumstances, we cannot defer to the trial court's understanding and application of HIPAA because it made no findings of fact or conclusions of law on this issue.

A-1576-24

"HIPAA requires health care providers and health care facilities to protect personal medical information from unauthorized disclosure." Smith v. Datla, 451 N.J. Super. 82, 102 (App. Div. 2017) (citing 42 U.S.C.A. § 1320d–6(a)(3)). Congress directed the Secretary of Health and Human Services to establish standards for the electronic exchange of medical information and to ensure the privacy of that information. See Michelson v. Wyatt, 379 N.J. Super. 611, 622–23 (App. Div. 2005) (citing 42 U.S.C.A. § 1320d-2(a)). "These regulations, collectively known as the Privacy Rule, set forth standards and procedures for the collection, maintenance and disclosure of certain health care information." Ibid. (citing 42 U.S.C.A. § 1320d–1; 45 C.F.R. § 160.102). "The Privacy Rule prohibits covered entities from using or disclosing personal health information except as permitted by regulation." Ibid. (citing 45 C.F.R. § 164.502(a); Smith v. Am. Home Prods. Corp. Wyeth-Ayerst Pharm., 372 N.J. Super. 105, 111 (Law. Div. 2003)).

45 C.F.R. § 164.502(a)(1) states in relevant part:

> A covered entity is permitted to use or disclose protected health information as follows: (i) To the individual; (ii) For treatment, payment, or health care operations, as permitted by and in compliance with § 164.506; (iii) Incident to a use or disclosure otherwise permitted or required by this subpart, provided that the covered entity has complied with the applicable requirements of §§ 164.502(b), 164.514(d), and

164.530(c) with respect to such otherwise permitted or required use or disclosure; (iv) Except for uses and disclosures prohibited under § 164.502(a)(5)(i), pursuant to and in compliance with a valid authorization under § 164.508; (v) Pursuant to an agreement under, or as otherwise permitted by, § 164.510; and (vi) As permitted by and in compliance with any of the following: (A) This section; (B) Section 164.512 and, where applicable, § 164.509; (C) Section 164.514(e), (f), or (g).

[45 C.F.R. § 164.502.]

In a nutshell, HIPAA prohibits the disclosure of protected health information by a health care provider unless there is appropriate authorization. See 45 C.F.R. § 164.508 ("[A] covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or disclosure of protected health information, such use or disclosure must be consistent with such authorization.").

Turning to the relevant facts in the matter before us, the record shows that plaintiff has yet to produce a valid HIPAA authorization form. In plaintiff's appeal brief appendix, she supplies a HIPAA authorization form that purports to be signed by her son, but that form does not include the signature of his court-appointed guardian. Notably, the HIPAA authorization signed by plaintiff's son dated January 14, 2025, and his December 21, 2024 Certification affirming

27

plaintiff as his Power of Attorney were both executed after the Morris County Surrogate Court's April 10, 2024 order declaring him to be mentally incapacitated and appointing a legal guardian. In these circumstances, we deem the purported authorization and certification to be invalid and inadequate to satisfy the HIPAA requirements. We therefore reverse the trial court's order compelling discovery that requires disclosure of plaintiff's son's medical records. Nothing in this opinion, however, should be construed to preclude plaintiff from seeking to obtain her son's protected health information through an appropriate HIPAA authorization properly executed by his legal guardian, or through a discovery motion made on notice to the legal guardian.[8]

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

---

[8] Likewise, nothing in this opinion should be construed to preclude plaintiff from obtaining compelled discovery that does not seek disclosure of her son's protected health information.

A-1576-24